Shane Brun (SBN #179079)
sbrun@kslaw.com
Thomas J. Friel, Jr. (SBN #80065)
tfriel@kslaw.com
KING & SPALDING LLP
601 California Street, Suite 100
Palo Alto, CA 94304
Telephone: (650) 422-6700

Brent Ray (*Pro Hac Vice*)
bray@kslaw.com
KING & SPALDING LLP
110 N. Wacker Drive, Suite 3800
Chicago, IL 60606
Telephone: (312) 764-6925

Angela Tarasi (*Pro Hac Vice*)
atarasi@kslaw.com
KING & SPALDING LLP
1401 Lawrence Street, Suite 1900
Denver, CO 80202
Telephone: (720) 535-2319

***Attorneys for Defendant Motive Technologies, Inc.***

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| OMNITRACS, LLC, et al., | Case No. 3:23-cv-05261-RFL |
| Plaintiffs, | **DEFENDANT MOTIVE TECHNOLOGIES, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS THE COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6)** |
| v. | |
| MOTIVE TECHNOLOGIES, INC., | |
| Defendant. | Hearing Date:  January 30, 2024<br>Hearing Time: 10:00 a.m.<br>Courtroom: 15, 18th Floor<br>Judge: Honorable Rita F. Lin |

# TABLE OF CONTENTS

I.      Introduction ................................................................................................ 1

II.     No Infringement of XRS Patents .............................................................. 2

III.    No Indirect or Willful Infringement of the '943, '906, '733, '067, '060, and '130 Patents . 5

        A.      Plaintiffs Fail Plausibly to Plead that Motive Knew of the Patents or the
                Alleged Infringement ..................................................................... 5

        B.      Plaintiffs Fail to Plausibly Plead Specific Intent to Infringe ....................................... 7

IV.     The '873 and '067 Patents Are Ineligible as a Matter of Law ............................................ 8

        A.      Section 101 Precludes Patenting Abstract Ideas ........................................... 8

        B.      Patent Eligibility Can Be Resolved on a Motion to Dismiss ....................................... 9

        C.      The '873 Patent Is Ineligible Under Section 101 ...................................... 10

        D.      The '067 Patent is Ineligible Under Section 101 ...................................... 12

V.      Conclusion ................................................................................................ 15

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbott Labs v. Baxter Pharmaceutical Prods., Inc.*,
   334 F.3d 1274 (Fed. Cir. 2003)..............................................................................2

*Aftechmobile Inc. v. Salesforce.com, Inc.*,
   2020 WL 6129139 (N.D. Cal. 2020), *aff'd* 853 F. App'x 669 (Fed. Cir. 2021).......................8

*ALD Social, LLC v. Apple, Inc.*,
   2023 WL 4747374 (N.D. Cal. 2023) ........................................................................4

*Alice Corp. v. CLS Bank Int'l*,
   573 U.S. 208 (2014)................................................................................... *passim*

*Arsus, LLC v. Tesla Motors, Inc.*,
   2020 WL 5552868 (N.D. Cal. 2020) ........................................................................4

*Athena Diagnostics, Inc. v. Mayo Collaborative Servs., LLC*,
   915 F.3d 743 (Fed. Cir. 2019)................................................................................9

*Berkheimer v. HP Inc.*,
   881 F.3d 1360 (Fed. Cir. 2018)..............................................................................9

*Brightedge Techs., Inc. v. Searchmetrics, GmbH*,
   304 F. Supp. 3d 859 (N.D. Cal. 2018) ...................................................................13

*Cleveland Clinic Found. v. True Health Diagnostics LLC*,
   859 F.3d 1352 (Fed. Cir. 2017)..............................................................................9

*Conoco, Inc. v. Energy & Envtl. Int'l, L.C.*,
   460 F.3d 1349 (Fed. Cir. 2006)..............................................................................5

*DSU Med. Corp. v. JMS Co.*,
   471 F.3d 1293 (Fed. Cir. 2006) (en banc)............................................................7, 8

*Elec. Power Grp., LLC v. Alstom S.A.*,
   830 F.3d 1350 (Fed. Cir. 2016)..................................................................10, 11, 13

*Ericsson Inc. v. TLC Commc'n Tech. Holdings Ltd.*,
   955 F.3d 1317 (Fed. Cir. 2020)............................................................................11

*FairWarning IP, LLC v. Iatric Systems, Inc.*,
   839 F.3d 1089 (Fed. Cir. 2016)........................................................................10, 13

*Finjan, Inc. v. Juniper Networks, Inc.*,
   2018 WL 905909 (N.D. Cal. 2018) ........................................................................7

*Fluidigm Corp. v. IONpath, Inc.*,
 2020 WL 408988 (N.D. Cal. 2020) ...........................................................................7

*Intellectual Ventures I LLC v. Cap. One Fin. Corp.*,
 850 F.3d 1332 (Fed. Cir. 2017)........................................................................9, 10, 12

*Intellectual Ventures I LLC v. Symantec Corp.*,
 838 F.3d 1307 (Fed. Cir. 2016).........................................................................8, 9, 14

*Interval Licensing LLC v. AOL, Inc.*
 896 F.3d 1335 (Fed. Cir. 2018)..............................................................................13

*MasterObjects, Inc. v. Amazon, Inc.*,
 2021 WL 4685306 (N.D. Cal. 2021) .......................................................................7

*Multilayer Stretch Cling Film Holdings, Inc. v. Berry Plastics Corp.*,
 831 F.3d 1350 (Fed. Cir. 2016).............................................................................2, 4

*Nanosys, Inc. v. QD Vision, Inc.*,
 2016 WL 4943006 (N.D. Cal. 2016) ........................................................................6

*NetFuel, Inc. v. Cisco Sys. Inc.*,
 2018 WL 4510737 (N.D. Cal. 2018) ........................................................................4

*Norian Corp. v. Stryker Corp.*,
 363 F.3d 1321 (Fed. Cir. 2004)................................................................................5

*People.ai, Inc. v. SetSail Techs., Inc.*,
 575 F. Supp. 3d 1193 (N.D. Cal. 2021) *aff'd sub nom.* 2023 WL 2820794
 (Fed. Cir. 2023)........................................................................................12, 15

*Procter & Gamble Co. v. QuantifiCare Inc.*,
 288 F. Supp. 3d 1002 (N.D. Cal. 2017) ..................................................................13

*Purepredictive, Inc. v. H2O.AI, Inc.*,
 2017 WL 3721480 (N.D. Cal. 2017) ......................................................................11

*Reputation.com, Inc. v. Birdeye, Inc.*,
 2022 WL 609161 (D. Del. 2022) *report and recommendation adopted* 2022
 WL 951408 (D. Del. 2022)........................................................................14, 15

*Return Mail, Inc. v. U.S. Postal Serv.*,
 868 F.3d 1350 (Fed. Cir. 2017)................................................................................9

*Sanderling Mgmt. Ltd. v. Snap Inc.*,
 65 F.4th 698 (Fed. Cir. 2023) .................................................................................9

*SAP Am., Inc. v. InvestPic, LLC*,
 898 F.3d 1161 (Fed. Cir. 2018)........................................................................11, 14

*Sec. First Innovations, LLC v. Google LLC*,
   2023 WL 7726389 (E.D. Va. 2023)......................................................................6, 7

*Shire Development, LLC v. Watson Pharms., Inc.*,
   848 F.3d 981 (Fed. Cir. 2017)............................................................................2, 3

*Sonos, Inc. v Google LLC*,
   591 F. Supp. 3d 638 (N.D. Cal. 2022) ...............................................................5, 7

*Split Pivot, Inc. v. Trek Bicycle Corp.*,
   987 F. Supp. 2d 838 (W.D. Wisc. 2013).................................................................3

*Splunk Inc. v. Cribl, Inc.*,
   2023 WL 2562875 (N.D. Cal. 2023) ...........................................................5, 6, 7, 12

*Surgetech, LLC v. Uber Techs. Inc.*,
   2023 WL 7182200 (D. Del. 2023) ........................................................................15

*In re TLI Commc'ns LLC Pat. Litig.*,
   823 F.3d 607 (Fed. Cir. 2016)..............................................................................14

*Twilio, Inc. v. Telesign Corp.*,
   249 F. Supp. 3d 1123 (N.D. Cal. 2017) ...............................................................10

*Two-Way Media Ltd. V. Comcast Cable Commc'ns, LLC*,
   874 F.3d 1329 (Fed. Cir. 2017)..............................................................9, 11, 14

*Univ. of Fla. Research Found., Inc. v. Gen. Elec. Co.*,
   916 F.3d 1363 (Fed. Cir. 2019)............................................................................11

*Virginia Innovation Sci. Inc. v. Amazon.com, Inc.*,
   227 F. Supp. 3d 582 (E.D. Va. 2017) ..................................................................12

*ZapFraud, Inc. v. Barracuda Networks, Inc.*,
   528 F. Supp. 3d 247 (D. Del. 2021)........................................................................7

**Statutes**

35 U.S.C. § 101 .............................................................................................. *passim*

**Other Authorities**

FED. R. CIV. PROC. 8 ..............................................................................................1

FED. R. CIV. PROC. 12(b)(6) .............................................................................1, 9

1

## TABLE OF EXHIBITS & ABBREVIATIONS

| Exhibit or Abbreviation | Description |
|---|---|
| The '943 patent | U.S. Patent No. 9,014,943 |
| The '906 patent | U.S. Patent No. 9,014,906 |
| The '733 patent | U.S. Patent No. 9,020,733 |
| The '060 patent | U.S. Patent No. 9,402,060 |
| The '067 patent | U.S. Patent No. 9,761,067 |
| The '130 patent | U.S. Patent No. 10,957,130 |
| The '873 patent | U.S. Patent No. 9,262,873 |
| XRS Patents | U.S. Patent Nos. 9,014,943; 9,014,906; and 9,020,733 |
| Ex. A | Excerpts from '943 patent file history |
| Ex. B | Excerpts from '906 patent file history |
| Appx. 1 | Claim 1 of the '873 patent |
| Appx. 2 | Claim 1 of the '067 patent |
| Dkt. 1 | Complaint |
| Dkt. 1-2 | The '067 patent |
| Dkt. 1-4 | The '873 patent |
| Dkt. 1-5 | The '943 patent |
| Dkt. 1-12 | Infringement Claim Chart for U.S. Patent No. 9,014,943 |
| Dkt. 1-13 | Infringement Claim Chart for U.S. Patent No. 9,014,906 |
| Dkt. 1-14 | Infringement Claim Chart for U.S. Patent No. 9,020,733 |

<u>**NOTICE OF MOTION AND MOTION TO DISMISS**</u>

TO ALL PARTIES AND THEIR COUNSEL OF RECORD.

PLEASE TAKE NOTICE that on January 30, 2024, at 10:00 a.m., or at such date and time as the Court may order, in the Courtroom of the Honorable Rita F. Lin, located at the San Francisco Courthouse, Courtroom 15 – 18th floor, 450 Golden Gate Avenue, San Francisco, California 94102, Defendant Motive Technologies, Inc. ("Defendant" or "Motive") will and hereby does respectfully move this Court for an Order dismissing with prejudice certain claims in Plaintiffs Omnitracs, LLC, XRS Corporation and SmartDrive Systems, Inc. (collectively, "Plaintiffs") Complaint pursuant to Federal Rule of Civil Procedure 8 and 12(b)(6).

This Motion is supported by the following Memorandum of Points and Authorities below; the supporting Declaration of Angela Tarasi in support of the Motion; the filings in this action; and any additional material or argument submitted to the Court before its decision on this Motion.

<u>**STATEMENT OF RELIEF SOUGHT**</u>

Motive requests an order dismissing with prejudice for Plaintiffs' (i) infringement claims of U.S. Patent No. 9,014,943; 9,014,906; and 9,020,733 (Counts V-VII); (ii) indirect and willfulness infringement claims of U.S. Patent No. 9,014,943; 9,014,906; 9,020,733; 9,402,060; 9,761,067; and 10,957,130 (portions of Counts I-III and V-VII); and (iii) all claims of U.S. Patent No. 9,262,873 and 9,761,067 (Counts II and IV).

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.     INTRODUCTION**

Motive moves to dismiss three categories of claims in Plaintiffs' complaint.  First, Plaintiffs' infringement allegations using the XRS patents fail as a matter of law because the accused product cannot meet the XRS patent claims.  Second, Plaintiff's allegations of willfulness and indirect infringement do not meet established pleading standards set forth by the Federal Circuit.  Third, two of Plaintiffs' asserted patents are ineligible under 35 U.S.C. § 101.

Motive's motion should be granted with prejudice.  There are no viable mechanisms for Plaintiffs to cure the latent defects in their allegations.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## II.        NO INFRINGEMENT OF XRS PATENTS

Motive does not infringe U.S. Patent Nos. 9,014,943; 9,014,906; and 9,020,733 (collectively, "the XRS patents") because, as the Complaint alleges, Motive's DRIVE risk score is calculated using *more* than the patent claims allow.  All XRS patent claims include a specific type of claim limitation—a Markush group—evident from the language "a plurality of a group consisting of."  An example of this claim language is shown below:

> wherein the electronic driver scorecard includes a <u>compos-</u>
> <u>ite driver score</u> based on a plurality of a group consisting
> of:
> fuel efficiency;
> occurrences of stop idle;
> occurrences of speeding;
> occurrences of hard braking;
> occurrences of high speed braking; and
> occurrences of safety violations.

'943 patent, claim 1; *accord* '906 patent, claims 1, 10 and '733 patent, claim 1.  Here, the Markush group is signaled by the language highlighted in blue, and the group itself is highlighted in yellow. *See Abbott Labs v. Baxter Pharmaceutical Prods., Inc.,* 334 F.3d 1274, 1279 (Fed. Cir. 2003).

Markush groups are "closed" groups.  *Multilayer Stretch Cling Film Holdings, Inc. v. Berry Plastics Corp.,* 831 F.3d 1350, 1358 (Fed. Cir. 2016).  The subject of the group can only be based upon the group itself, and nothing more.  *Id*.  In the XRS patents, the subject of the group is the "composite driver score" (underlined in red, above).  As a result, there is a "very strong presumption" that the "composite driver score" cannot be "based on" anything more than the Markush group elements.  *Id.* ("Thus, if a patent claim recites 'a member selected from the group consisting of A, B, and C,' the 'member' is presumed to be closed to alternative ingredients D, E, and F.").  When an accused product includes an element *outside* the Markush group, that product does not infringe.  *See Shire Development, LLC v. Watson Pharms., Inc*., 848 F.3d 981, 986 (Fed. Cir. 2017) (reversing summary judgment of infringement and remanding for a judgment of noninfringement when accused product had component outside Markush group).

As evident from the Complaint and its attached claim charts, such is precisely the case here.  Plaintiffs allege that Motive's DRIVE risk score meets the limitation of "composite driver

score." *See* Dkts. 1-12 ('943 patent chart) at 84-92; 1-13 ('906 patent chart) at 29-37; 1-14 ('733 patent chart) at 41-66. In each chart, Plaintiffs alleges Motive's DRIVE risk score is calculated using information *outside* the claimed Markush group. For example, the '943 and '733 patent charts allege the DRIVE risk score is calculated using "hard accelerations" along with the "intensity and duration of the event in addition to understanding the typical behavior for the vehicle type and geographic location of the event." Dkt. 1-12 at 84; Dkt.1-14 at 54. The event is also compared "against the expected behavior for that vehicle type on that specific road segment." *Id*. All XRS patent charts further alleged the DRIVE risk score is also calculated using "hard corners." Dkt. 1-12 at 85; Dkt.1-13 at 30; Dkt.1-14 at 55. Each chart further states that "the total miles for each driver" is considered. Dkt. 1-12 at 86; Dkt. 1-13 at 31; Dkt. 1-14 at 56. All charts further indicate that the score incorporates other "behaviors" such as "close following," "drowsiness," "smoking" and "cell phone usage." Dkt. 1-12 at 89; Dkt. 1-13 at 34; Dkt. 1-14 at 63. None of these items fall within the claimed Markush group.

Plaintiffs' broad allegations are echoed in Motive's "DRIVE Risk score 101: how to make your safety team more efficient with advanced AI" publication, linked in each XRS patent chart. https://gomotive.com/wp-content/uploads/2022/08/Guide_DRIVE-risk-score-101.pdf,   *accord* Dkt 1-12 at 88; Dkt. 1-13 at 33; Dkt. 1-14 at 62. From that document, it is clear that Plaintiffs' allegations include far more than the Markush group:



https://gomotive.com/wp-content/uploads/2022/08/Guide_DRIVE-risk-score-101.pdf at 5.

A ruling of noninfringement of each XRS patent is therefore appropriate. *See Shire,* 848 F.3d at 986; *see also Split Pivot, Inc. v. Trek Bicycle Corp*., 987 F. Supp. 2d 838, 877 (W.D. Wisc.

2013) (no infringement where shock absorber mounted with links outside the claimed Markush group).  Such rulings are appropriate on the pleadings when the complaint and attached documents do not set forth a plausible infringement read.  *See ALD Social, LLC v. Apple, Inc.*, 2023 WL 4747374, at *8 (N.D. Cal. 2023) (granting motion to dismiss where documents Plaintiff attached to complaint demonstrated no infringement); *Arsus, LLC v. Tesla Motors, Inc.*, 2020 WL 5552868, at *2 (N.D. Cal. 2020) (dismissing complaint where Plaintiff "pled itself out of court" by admitting in its amended complaint that accused vehicle could not infringe).

It is true that the "closed" nature of Markush groups is not absolute.  The standard to deviate, however, is extremely high:  "[T]o overcome the exceptionally strong presumption that a claim term set off with 'consisting of' is closed to unrecited elements, the specification and prosecution history must unmistakably manifest an alternative meaning."  *Multilayer*, 831 F.3d at 1359.  The XRS patents share identical specifications.  Plaintiffs do not allege in their Complaint, nor could they, that "consisting of" when used to refer to the "composite driver score" means anything but a "closed" group.  *See, e.g.,* Dkt. 1-5 at 35:7-23 (listing various factors that may be considered in calculating the score and noting that "any variety of *these factors* could define a set or sub-set of factors used and displayed by the system"); *see also id.* at Fig. 12 (calculating the driver score using only the six factors listed in the XRS patent claims).  In other words, the patentee interpreted "consisting of" to define a "closed" group of factors.

The XRS patent prosecution histories are consistent with this conclusion.[1]  Specifically, during prosecution of the '943 patent application, the patentee presented various claims with "selected from a group consisting of" language.  The Examiner specifically stated that such claims "will be interpreted as Markush groups."  *See* Ex. A at PDF Page 7.  The '906 patent application Examiner made the same observation.  *See* Ex. B at PDF Page 10.  In neither case did the patentee dispute the Examiner's characterization.  *See* Ex. A at PDF Page 31; Ex. B at PDF Page 34.

---

[1] The Court may properly consider the prosecution histories of the asserted patents on a motion to dismiss.  *See, e.g., NetFuel, Inc. v. Cisco Sys. Inc.,* 2018 WL 4510737, at *2 n.1 (N.D. Cal. 2018) (taking judicial notice of the prosecution history even without a specific request from defendant and granting motion to dismiss of no willfulness).

There are two other recognized exceptions to the "closed" nature of Markush groups; neither applies here.  First, if an additional element outside the Markush group is a mere impurity of a group component, it will not be excluded from the group.  *Conoco, Inc. v. Energy & Envtl. Int'l, L.C.,* 460 F.3d 1349, 1361 (Fed. Cir. 2006).  But none of the additional factors in Motive's DRIVE risk score are "impurities" or remotely similar.  Second, if the additional element is "unrelated to the invention," it will likewise not be excluded.  *Norian Corp. v. Stryker Corp.*, 363 F.3d 1321, 1331–32 (Fed. Cir. 2004).  But the additional factors in Motive's DRIVE risk score are unquestionably related to the claimed invention:  they are inputs into what Plaintiffs allege is the claimed "composite drive score."

## III.   NO INDIRECT OR WILLFUL INFRINGEMENT OF THE '943, '906, '733, '067, '060, AND '130 PATENTS

### A.   Plaintiffs Fail Plausibly to Plead that Motive Knew of the Patents or the Alleged Infringement

Plaintiffs' allegations are insufficient to plead the requisite pre-suit knowledge of the patents-in-suit. *See, e.g., Splunk Inc. v. Cribl, Inc.*, 2023 WL 2562875, at *2-4 (N.D. Cal. 2023) (plaintiff did not sufficiently allege competitor had pre-suit knowledge of patents through former employees so competitor could not be liable for willful or indirect patent infringement); *Sonos, Inc. v Google LLC*, 591 F. Supp. 3d 638, 647 (N.D. Cal. 2022) ("Like willful infringement, both forms of indirect infringement … require knowledge of the patent and knowledge of infringement.").  Generally, a plaintiff establishes pre-suit knowledge through a notice letter that identifies both (i) the patent claims and (ii) how accused products allegedly infringe.  *See Splunk*, 2023 WL 2562875, at *2-3 (collecting cases).  Here, Plaintiffs only notified Motive of the '873 patent prior to suit.  *See* Dkt. 1 ¶ 25.

Plaintiffs admit that they did not notify Motive of the XRS patents during its 2018 letter campaign, even though the patents had issued.  *See id.* ¶¶ 24, 293 (identifying unasserted patents included in the letter).  Pre-suit knowledge is patent specific; notice of a portfolio or other patents is insufficient.  *Sonos*, 591 F. Supp. 3d at 643 (knowledge of a "patent family" or the plaintiff's "patent portfolio" is not enough).  Lacking specific notice, Plaintiffs try to impute the knowledge of a former XRS employee and named inventor, Mr. Daniel Fuglewicz, onto Motive.  *See* Dkt. 1

¶¶ 213, 254, 292 (alleging Mr. Fuglewicz worked at Motive and was aware of the XRS patents but not alleging Motive knew of the XRS patents).  Plaintiffs fail, however, to allege any facts showing Mr. Fuglewicz informed Motive of the XRS patents, much less had knowledge of any alleged infringement of the XRS patents.  Thus Plaintiffs' allegations are unlike in other cases where the knowledge of an asserted patent inventor and *co-founder* of a defendant was imputed onto the company, and do not meet even the plausibility requirement.  *Cf. Nanosys, Inc. v. QD Vision, Inc.*, 2016 WL 4943006, at *7 (N.D. Cal. 2016) (finding alleged patent knowledge of "inventors and [defendant] *founders*" sufficient).[2]

For U.S. Patent Nos. 9,402,060; 9,761,067; and 10,957,130, Plaintiffs rely upon (i) a generic allegation that some unnamed former employees knew of these patents and conveyed that knowledge of each patent and the alleged infringement to Motive, and (ii) notice through the Complaint.  Neither is sufficient to meet the plausibility standard for pleading indirect or willful infringement.  *Splunk*, 2023 WL 2562875, at *2 (pre-suit knowledge could not be plausibly inferred from allegation that defendant was founded by plaintiff's ex-employees).  In fact, Plaintiffs' allegations are even more tenuous than those in *Splunk*.  *See id.*  In that case, Splunk's allegations (i) identified the ex-employees with knowledge of the patents, (ii) tied them to the defendant (because they were founders), and (iii) alleged those employees "managed products which practice patents [defendant] allegedly infringes."  *See id.*  Plaintiffs' lesser allegations for the '060, '067, and '130 patents does not include any such allegations supporting the alleged knowledge.

To the extent Plaintiffs intend to rely on post-Complaint knowledge for the '060, '067, and '130 patents, this should be rejected.  *Sec. First Innovations, LLC v. Google LLC*, 2023 WL 7726389, at *10 (E.D. Va. 2023).  While there is no binding authority from the Federal Circuit, courts routinely dismiss indirect or willful patent infringement allegations where the defendant's alleged knowledge of the asserted patents is based on the content of that complaint.  *E.g. Splunk*, 2023 WL 2562875, at *2-4; *Sec. First Innovations*, 2023 WL 7726389, at *10; *Sonos*, 591 F. Supp.

---

[2] All emphasis added unless otherwise noted.

3d at 646, 648-649; *ZapFraud, Inc. v. Barracuda Networks, Inc.*, 528 F. Supp. 3d 247, 252 (D. Del. 2021).  Allowing Plaintiffs to bootstrap their willful and indirect infringement allegations via post-suit knowledge impermissibly allows Plaintiffs to "prove an element of a legal claim with evidence that the plaintiff filed the claim," a loophole that is "neither wise nor consistent with principles of judicial economy." *ZapFraud*, 528 F. Supp. 3d at 251 (complaint cannot serve as notice for indirect or willful infringement).

### B.    Plaintiffs Fail to Plausibly Plead Specific Intent to Infringe

Because Plaintiffs fail to allege Motive knew of any Asserted Patent except the '873 patent, Plaintiffs also cannot plausibly allege Motive had a specific intent to infringe.  "[W]illfulness requires pleading more than knowledge of the patent and direct infringement—it requires a specific intent to infringe." *MasterObjects, Inc. v. Amazon, Inc.*, 2021 WL 4685306, *6 (N.D. Cal. 2021) (no specific intent where no pre-suit knowledge of infringement); *Finjan, Inc. v. Juniper Networks, Inc.*, 2018 WL 905909, at *4-5 (N.D. Cal. 2018) (inducement also requires "specific intent to encourage another's infringement" but deficient pre-suit knowledge allegations "alone require[] dismissal of … [plaintiff's] induced infringement claims").

For all of its inducement claims, Plaintiffs also failed to plausibly plead Motive specifically intended for its customers to infringe.  *See Fluidigm Corp. v. IONpath, Inc.*, 2020 WL 408988, at *3 (N.D. Cal. 2020) (allegations of specific conduct that is "merely *consistent* with" infringement is not enough to plausibly conclude defendant's "affirmative intent" to *induce others* to infringe) (emphasis in original).  Induced infringement "requires more than just intent to cause the acts that produce direct infringement. Beyond that threshold knowledge, the inducer must have an affirmative intent to cause direct infringement." *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006) (en banc).

Here, however, Plaintiffs rely on conclusory allegations that "Motive knowingly induces infringement of at least [Asserted Patent] by customers and end-users of the Accused Products with specific intent to induce infringement, and/or with willful blindness to the possibility that its acts induce infringement, through activities relating to selling, marketing, advertising, promotion, support, and distribution of the Accused Products in the United States."  Dkt. 1 ¶¶ 63, 99, 134,

176, 217, 258, 297.  These vague allegations simply recite legal elements, and fail to articulate facts that plausibly show Motive knew both: (i) the alleged acts infringed the Asserted Patents and (ii) the promotion of its products would induce or encourage others to infringe the Asserted Patents. *See DSU*, 471 F.3d at 1306 (clarifying inducement requires "specific intent to encourage another's infringement"; it is not enough to allege the defendant had knowledge of the allegedly inducing acts, it must also know the acts would induce actual infringement).

## IV.   THE '873 AND '067 PATENTS ARE INELIGIBLE AS A MATTER OF LAW

### A.   Section 101 Precludes Patenting Abstract Ideas

"Abstract ideas" are not patent eligible.  35 U.S.C. § 101; *Alice Corp. v. CLS Bank Int'l*, 573 U.S. 208, 217-18 (2014).  Courts determine eligibility under 35 U.S.C. § 101 through a two-step test.  *Id.*  At step one, the Court determines whether the claims are directed to an abstract idea, focusing on the language of the asserted claims.  *Id.* at 218.  Specifically, if a computer is involved, the Court considers "whether the claims focus on the specific asserted improvement in computer capabilities or, instead, on a process that qualifies as an 'abstract idea' for which computers are invoked merely as a tool."  *Aftechmobile Inc. v. Salesforce.com, Inc.*, 2020 WL 6129139, at *1 (N.D. Cal. 2020), *aff'd*, 853 F. App'x 669 (Fed. Cir. 2021).  A claim that could be performed by a human, exercising generic computer-implemented steps, is typically abstract.  *E.g. Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1318 (Fed. Cir. 2016) ("*Symantec*").

At step two, the Court determines whether the claim elements, individually or collectively, add "significantly more" to the abstract idea—something "inventive"—that is "sufficient to 'transform' the claimed abstract idea into a patent-eligible application."  *Alice*, 573 U.S. at 217-22; *Symantec*, 838 F.3d at 1322 (any inventive concept must be "in the claims," not in unclaimed "technological details set forth in the patent's specification").  Claims that simply recite "generic functional language to achieve [the] purported solutions" without claiming "*how* the desired result is achieved" are unpatentable.  *Two-Way Media Ltd. V. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1339 (Fed. Cir. 2017) (emphasis in original).[3]

---

[3] Internal quotations and citations omitted unless otherwise noted.

1    To satisfy Section 101, software cannot merely organize existing information into a new
2    form, carry out a longstanding commercial practice, or otherwise recite a long prevalent,
3    fundamental practice now accomplished with the benefit of a computer.  *See, e.g.*, *Return Mail,*
4    *Inc. v. U.S. Postal Serv.*, 868 F.3d 1350, 1368 (Fed. Cir. 2017), *reversed and remanded on other*
5    *grounds*, 139 S. Ct. 1853 (2019); *Intellectual Ventures I LLC v. Cap. One Fin. Corp.* ("*Cap. One*"),
6    850 F.3d 1332, 1340-41 (Fed. Cir. 2017); *Symantec*, 838 F.3d at 1313-14.  Only those claims that
7    "improve the functioning of the computer itself" or provide technological solutions to technical
8    problems are patent eligible under Section 101.  *Alice*, 573 U.S. at 225.

9    ###### B.    Patent Eligibility Can Be Resolved on a Motion to Dismiss

10   Whether an asserted patent is invalid for failure to satisfy Section 101 "is a question of law
11   based on underlying facts, that may be resolved on a Rule 12(b)(6) motion when the undisputed
12   facts require a holding of ineligibility."  *Athena Diagnostics, Inc. v. Mayo Collaborative Servs.,*
13   *LLC*, 915 F.3d 743, 749 (Fed. Cir. 2019). While the inventiveness inquiry of *Alice* step two may
14   sometimes involve "underlying issues of fact," a factual dispute arises only where either the claims
15   themselves capture the alleged inventiveness or are directed to an allegedly inventive concept
16   contained in the specification. *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018).

17   Additionally, courts need not engage in claim construction before resolving a Section 101
18   motion.  *Sanderling Mgmt. Ltd. v. Snap Inc.*, 65 F.4th 698, 704 (Fed. Cir. 2023) (explaining if
19   opposing party raises claim construction concerns on motion to dismiss, district court may require
20   that party to propose a construction and explain how it impacts the 101 analysis).  Where, as here,
21   the claims are directed to ineligible subject matter "under all plausible constructions"—and
22   particularly, adopting the opposing party's proposed construction—then the motion to dismiss
23   should be granted without completing claim construction.  *Id.*; *see also Cleveland Clinic Found.*
24   *v. True Health Diagnostics LLC*, 859 F.3d 1352, 1360 (Fed. Cir. 2017) (affirming dismissal under
25   Section 101 prior to claim construction because plaintiff proposed no construction that would have
26   changed the ineligibility analysis).

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### C.    The '873 Patent Is Ineligible Under Section 101

Claim 1 of U.S. Patent No. 9,262,873 is directed to the abstract idea of (i) organizing and correlating data to a set of metrics and (ii) providing the correlated data set to a client.

Claim 1 discloses a "method of processing data" comprising: "receiving" data, "identifying" "events" in the data, "generating a mapping table" from the data and "correlating" the data using the mapping table, "providing the correlated set of data to a client," then "receiving" updated data, "updating the correlated set of data," and "providing the updated correlated set of data to the client." *See* Appx 1.  The "mapping table" is nothing more than a data structure to store and organize data.  Dkt. 1-4 6:3-7, 8:41-61, Fig. 3 (depicting a "mapping table" (355) as a chart with organized data).  According to Plaintiffs, the claimed method "generate[s] a special correlated set of data for vehicle operators, and updates the data using 'an updated set of metrics, an additional event' to generate further updated data." Dkt. 1 ¶ 155.

***Alice* Step One**:  Claim 1 is a patent-ineligible abstract idea because it directed to data manipulation—receiving, correlating, and providing data—which the Federal Circuit has repeatedly found patent ineligible.  *See, e.g.*, *Cap. One*, 850 F.3d at 1340–41 (patent claims for "specific data structures" to "interrelate" XML documents "merely encompass[] the abstract idea itself of organizing, displaying, and manipulating data"); *FairWarning IP, LLC v. Iatric Systems, Inc.*, 839 F.3d 1089, 1093 (Fed. Cir. 2016) (claims that collect and analyze data to determine fraud or misuse then provide a notification were abstract); *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016) (the "realm of abstract ideas" includes "collecting information, including when limited to particular content"); *Twilio, Inc. v. Telesign Corp.*, 249 F. Supp. 3d 1123, 1137 (N.D. Cal. 2017) (observing "information itself is intangible" and noting the Federal Circuit finds claims abstract where they are directed to some combination of collecting, analyzing, and/or displaying information).  That the '873 claims may process "vehicle data" or particular vehicle or operator metrics does not change the result.  "At best, this limits the invention to a technological environment" but does not make the abstract concept any less abstract. *Cap. One.*, 850 F.3d at 1340.

1

2

3

4

5

6

7

8

9

10

      Many courts have found processes for organizing data, such as in a "mapping table," and correlating data are directed to an abstract idea because they are "the sort of process that can be performed in the human mind, or by a human using a pen and paper."  *Ericsson Inc. v. TLC Commc'n Tech. Holdings Ltd.*, 955 F.3d 1317, 1327 (Fed. Cir. 2020); *see also Univ. of Fla. Research Found., Inc. v. Gen. Elec. Co.*, 916 F.3d 1363, 1367 (Fed. Cir. 2019) (claims that automate "pen and paper methodologies" in healthcare facilities with "data synthesis technology" to integrate and present data were abstract).  As Figure 3 shows, a mapping table can be drawn with pen and paper, and the steps in Figure 4 can be performed by a human.  *See Purepredictive, Inc. v. H2O.AI, Inc.*, 2017 WL 3721480, at *5 (N.D. Cal. 2017) ("[J]ust because a computer can make calculations more quickly than a human does not render a method patent eligible.").

11

12

13

14

15

16

      *Alice* **Step Two**:  Before making a step two determination, a court first must identify those claim elements that are not abstract.  *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1168-70 (Fed. Cir. 2018).  This threshold step is necessary because step two addresses the "additional elements" the claim appends to the abstract idea, not the abstract idea itself.  *Id.* at 1169 (disregarding claimed operations under step two because they "simply provide further narrowing of what are still mathematical operations" and "add nothing outside the abstract realm.").

17

18

19

20

21

22

23

24

25

26

27

      The '873 patent claims have no elements, individually or as an ordered combination, that transform the abstract idea into a patentable invention.  Claim 1 recites either abstract information—such as "data associated with a vehicle," "metrics," "events," "timestamps," "a mapping table," and "correlated set of data"—or mental steps processing this abstract information—" receiving" metrics, "identifying" events in the metrics, "generating" a mapping table, "correlating" metrics and data, "providing" the correlated set of data, and "updating" the set of data.  Appx. 1.  These mental steps are purely functional, without specifying any particular structure or physical acts taken to implement the steps, which is another disqualifier under step two.  *Two-Way Media*, 874 F.3d at 1339 (claims simply reciting "generic functional language" without claiming "how the desired result is achieved" fail step two).  *Elec. Power Grp.*, 830 F.3d at 1353 ("The advance [the claims] purport to make is a process of gathering and analyzing

28

1   information of a specified content, then displaying the results, and not any particular assertedly

2   inventive technology for performing those functions.").

3          At best, the only technological element in Claim 1 is "a processor" for "correlating" the

4   data.  But functional language using conventional technology in a typical manner does not save an

5   otherwise abstract idea from ineligibility. *See Virginia Innovation Sci. Inc. v. Amazon.com, Inc.*,

6   227 F. Supp. 3d 582, 595, 604 (E.D. Va. 2017) (finding ineligible claims where "the mobile

7   network, the phone, the intermediary device, and the display monitor all perform their

8   conventional functions" and "the process for 'converting' and 'compressing' signals is described

9   in purely functional terms, without any algorithm or code for achieving those results); *accord*

10  Claim 14 (claiming a "wireless interface" for "communicating").  Any "computer devices" in

11  Claim 1 perform only the standard computing functions of data processing, analysis, or display to

12  implement this abstract idea; they do not improve the computer itself.  *See Cap. One*, 850 F.3d at

13  1341 (generic computer elements and generic computer components that "merely restate" the

14  functions are not inventive concepts).

15         It is not necessary for the Court to address each claim of the '873 patent; it may instead

16  focus on a representative claim.  *E.g. People.ai, Inc. v. SetSail Techs., Inc.*, 575 F. Supp. 3d 1193,

17  1199 (N.D. Cal. 2021).  Claim 1 is representative of the four independent claims of the '873 patent

18  which are all linked to the same "correlate data" abstract idea recited as a method (Cl. 1), a

19  "system" (Cls. 8, 14), or "non-transitory computer readable medium" (Cl. 20), which are purely

20  generic recitations of conventional computer components.  *See Splunk*, 2023 WL 2562875 at *5.

21  The '873 patent dependent claims provide additional details of the kind of data that is analyzed

22  and correlated, but none provides any further technological features or functionality.

23     **D.     The '067 Patent is Ineligible Under Section 101**

24         Claim 1 of the '067 patent is directed to the abstract idea of collecting, organizing, and

25  calculating data to create a score.  Claim 1: collects vehicle operator information and event records;

26  associates and transmits information in a dataset; analyzes the information using "a mathematical

27  algorithm" to determine a performance measure; and in some claims, generates and provides a

28  notification (or "counseling information") based on the performance measure.  *See* Appx 2.

The specification describes the "primary elements" of the invention include "a[n] associator; a database; and an analyzer" (Dkt. 1-2 at 8:54-9:24), and the inventions provide a "metric which quantifies operator performance history" (*id.* at 6:28-30). "The associator forms an association" between "data elements" and "forms" and "transmits" a dataset. *Id.* at 8:57-56. "The database is arranged to receive event record datasets" and "provide output in response to requests or queries." *Id.* at 9:1-15. The "analyzer" receives data from the database and processes the data "to form a statistical result." *Id.* at 9:16-23. In some embodiments, it applies "algorithms" to the data to "yield a mathematical conclusion." *Id.*

***Alice* Step One**: Claim 1 is a patent-ineligible abstract idea that merely "recites steps to gather and organize data, and analyze that data via mathematical calculation." *Brightedge Techs., Inc. v. Searchmetrics, GmbH*, 304 F. Supp. 3d 859, 866 (N.D. Cal. 2018) (invalidating patents directed to improving performance via data aggregation and analysis). The Federal Circuit consistently holds "collecting information"—as the "associator" and "database" of the '067 patent do—is an abstract idea, even if the information is "limited to particular content." *Elec. Power Grp.*, 830 F.3d at 1353. "[A]nalyzing information by steps people go through in their minds, or by mathematical algorithms"—like the analyzer of the '067 patent—is also a "mental process[] within the abstract-idea category." *Id.*; *see also FairWarning*, 839 F.3d at 1093-94 (claims "directed to collecting and analyzing information to detect misuse" were abstract); *Procter & Gamble Co. v. QuantifiCare Inc.*, 288 F. Supp. 3d 1002, 1018 (N.D. Cal. 2017) ("[B]oth acquiring and analyzing information are regularly treated as within the realm of abstract ideas.").

Further showing the idea is abstract, Claim 1 provides no guidance on *how* to associate the information, *how* to form the datasets, or *how* to determine the performance measure. Courts consistently hold the requirements of Section 101 unmet where a claim merely recites functional language without claiming how to achieve those functions. For example, in *Interval Licensing LLC v. AOL, Inc.*, the claims recited numerous computer steps for coordinating the display of content to a user, including an "attention manager" for arranging the content. 896 F.3d 1335, 1339-40, 1344-45 (Fed. Cir. 2018). Like Claim 1 here, the claims in *Interval Licensing* included no details on "how the attention manager perform[ed] the function[s]" or "*how* to engineer or program

1    the display;" instead, the claims "simply demand[ed] the production of a desired result … without

2    any limitation on how to produce that result."  *Id.* at 1345 (emphasis in original).

3        Claim 1's recitation of associating data with an individual and analyzing that data to give

4    a performance score is a fundamental concept performed by teachers and managers for decades if

5    not centuries.  For example, teachers (1) receive test, participation, and other event records from

6    students throughout the semester, (2) associate the event records with individual students, (3)

7    create a dataset, such as a grade chart with the information, and (4) analyze the data to give each

8    student a grade.  Claim 1's reflection of this longstanding, fundamental human concept is another

9    indication of abstraction.  *See Reputation.com, Inc. v. Birdeye, Inc.*, 2022 WL 609161, at *10 (D.

10   Del. 2022), *report and recommendation adopted*, 2022 WL 951408 (D. Del. 2022) (claims for

11   "assessing an individual's reputation based on documents about the individual to generate a

12   reputation score" were abstract); *Symantec*, 838 F.3d at 1314 ("fundamental … practice[s] long

13   prevalent are abstract ideas").  Plaintiffs admit the claimed inventions simply "automate the

14   evaluation and assessment of driver operations," Dkt. 1 ¶ 80, but automating an abstract idea is not

15   a basis for finding a claim patent eligible.  *Reputation.com*, 2022 WL 609161, at *12 (automatic

16   coding or calculation of reputation score was patent ineligible).

17       ***Alice* Step Two**:  There is no inventive concept in Claim 1 that makes it patent eligible.

18   Purely functional claim elements—those reciting a result or function without a particular way for

19   achieving or performing it such as steps to receive, obtain, associate, form, and determine—are

20   inadequate under step two.  *Two-Way Media*, 874 F.3d at 1339.  Likewise, elements that simply

21   provide mathematical operations—such as the limitation "wherein the determination uses a

22   mathematical algorithm"—"add nothing" beyond the abstract idea.  *SAP*, 898 F.3d at 1169.

23       The specification shows the system uses conventional computer components, such as a

24   "communications link," "relational database," and "processor," none of which add an inventive

25   concept.   Dkt. 1-2, 10:60-65, 15:62-66; *Alice*, 573 U.S. at 226 (hardware terms like "data

26   processing system," "communications controller," and "data storage unit" are "purely functional

27   and generic"); *In re TLI Commc'ns LLC Pat. Litig.*, 823 F.3d 607, 614 (Fed. Cir. 2016) (holding

28   generic computer components insufficient to add an inventive concept).  And "simply automating

the performance of an abstract idea by way of the use of a computer" cannot provide an inventive concept. *Reputation.com*, 2022 WL 609161, at *12. Here, Claim 1 does not have a saving "inventive concept" that adds "significantly more" to the abstract idea. *See id.*

To extent that Plaintiffs focus on the "performance measure" limitation, it is a mathematical calculation that does not provide an inventive concept. In Claim 1, the system "determines" the performance measure, but provides no details as to what calculation to perform, how to perform that calculation, or how to update the performance measure. The same is true for the claims that include generating "counseling information"—the claims do not say what counseling information is or how it is generated. This overt lack of specificity is critical; without it, there is no inventive concept to be found. *See Surgetech, LLC v. Uber Techs. Inc.*, 2023 WL 7182200, at *7 (D. Del. 2023) (claimed "performance indicator" did not constitute an inventive concept because it was "merely a vague metric wherein the user would be free to choose their own parameters"). The same rationale applies here; there is "nothing 'inventive' about any claim details, individually or in combination, that are not themselves in the realm of abstract ideas." *Id.*

Claim 1 of the '067 patent is representative of the four independent claims in the '067 patent, all of which recite systems (claims 1, 8) or methods (claims 15, 22) to gather and organize data using the same three elements. *E.g. People.ai*, 575 F. Supp. 3d at 1199. The '067 patent's dependent claims provide additional details the data or algorithm, but none provides any further technological features or functionality.

## V.   CONCLUSION

For the foregoing reasons, Plaintiffs infringement claims of the '943, '906, and '733 patents; indirect and willfulness infringement claims of the '943, '906, '733, '067, '060, and '130 patents; and all claims of the '873 and '067 patents should be dismissed.

| | |
|---|---|
| 1 | Dated: December 6, 2023 |
| 2 | |
| 3 | |
| 4 | |
| 5 | |
| 6 | |
| 7 | |
| 8 | |
| 9 | |
| 10 | |
| 11 | |
| 12 | |
| 13 | |
| 14 | |
| 15 | |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |

Respectfully submitted,

KING & SPALDING LLP

By: */s/ Brent P. Ray*
Brent P. Ray

Shane Brun (SBN #179079)
sbrun@kslaw.com
Thomas J. Friel, Jr. (SBN #80065)
tfriel@kslaw.com
KING & SPALDING LLP
601 S. California Street, Suite 100
Palo Alto, CA 94304
Telephone: (650) 422-6700

Brent Ray (*Pro Hac Vice forthcoming*)
bray@kslaw.com
KING & SPALDING LLP
110 N. Wacker Drive, Suite 3800
Chicago, IL 60606
Telephone: (312) 764-6925

Angela Tarasi (*Pro Hac Vice pending*)
atarasi@kslaw.com
KING & SPALDING LLP
1401 Lawrence Street, Suite 1900
Denver, CO 80202
Telephone: (720) 535-2319

***Attorneys for Defendant Motive Technologies, Inc.***

1

## CERTIFICATE OF SERVICE

2        I hereby that on December 6, 2023 I electronically transmitted the forgoing document to

3  the Clerk's Office using the CM/ECF system for filing and transmittal of a Notice of Electronic

4  Filing to all counsel in this matter, all counsel being registered to receive Electronic Filing.

5

6                                   */s/  Brent P. Ray*

7                                   Brent P. Ray

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28