UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OMNITRACS, LLC, et al.,<br><br>        Plaintiffs,<br><br>    v.<br><br>MOTIVE TECHNOLOGIES, INC.,<br><br>        Defendant. | Case No. 23-cv-05261-RFL<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**<br><br>Re: Dkt. No. 30 |

      Motive's Motion to Dismiss is granted in part and denied in part. This order assumes the reader's familiarity with the factual allegations, the relevant law, and the parties' arguments.

      ***'873 Patent Validity.*** The '873 patent is directed at an abstract idea and is therefore not patentable under section 101. 35 U.S.C. § 101; *see also Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208 (2014). Beginning with step one of the *Alice* analysis, the '873 patent is directed at the abstract idea of combining and correlating data into a dataset, updating the dataset, and providing the dataset to a client. It claims "methods" (claims 1–7), "systems" (claims 8–19), and a "computer-readable medium" comprising various "instructions" (claims 20–25) that receive performance metrics from multiple vehicles, associate those metrics to specific drivers using timestamps, store and update that information in a "mapping table," and provide the resulting correlated dataset to a client. (Dkt. No. 1-4.) The Federal Circuit has repeatedly found that claims that focus on "collecting information, analyzing it, and displaying certain results of the collection and analysis" are directed to a patent-ineligible concept. *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016) (collecting cases).

      At the hearing, Omnitracs argued that, like in *Enfish, LLC v. Microsoft Corp.*, 822 F.3d

1327 (Fed. Cir. 2016), the '873 patent is directed to an innovative database model. But in *Enfish*, the patent claimed a "self-referential" database model that improved "computer functionality itself." *Id.* at 1333, 1336. Omnitracs's claimed "mapping table" does not "recite any assertedly inventive technology for improving computers as tools." *Interval Licensing LLC v. AOL, Inc.*, 896 F.3d 1335, 1344 (Fed. Cir. 2018). It may have been a novel and useful industry improvement, but it is not an improvement to the computer's technology. The '873 patent is also distinct from *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299 (Fed. Cir. 2016), where the patents used specific, objective, "unconventional rules" to automate a 3-D animation process that could previously only be performed through subjective, artistic human action. *Id.* at 1303, 1313–14. By contrast, the '873 patent carries out a process that a human manager could do by pen and paper: record information about a driver's performance, figure out who was driving based on the timestamp written in paper records, copy that information to a central file organized by driver and car, and hand that file over to a client. The '873 patent is therefore directed to an abstract idea. *See People.ai, Inc. v. SetSail Techs., Inc.*, 575 F. Supp. 3d 1193, 1207 (N.D. Cal. 2021), *aff'd sub nom. People.ai, Inc. v. Clari Inc.*, No. 2022-1364, 2023 WL 2820794 (Fed. Cir. Apr. 7, 2023).

Turning to step two of the *Alice* analysis, the claims do not recite inventive concepts. The claims do not describe the specific technological means by which these methods, systems, and mediums operate. Nor do the claims describe how the data fields are mapped to each other, and "claims to 'an abstract idea implemented on generic computer components, without providing a specific technical solution . . . do not suffice at step two.'" *Int'l Bus. Machines Corp. v. Zillow Grp., Inc.*, 50 F.4th 1371, 1379 (Fed. Cir. 2022) (quoting *BASCOM Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1352 (Fed. Cir. 2016)). Omnitracs argues that the Court should read a "real time" requirement into the claims, but this would not transform the claims into patentable subject matter. *See id.* at 1371 ("Using a computer to 'concurrently update' the map and the list may speed up the process, but 'mere automation of manual processes using generic computers does not constitute a patentable improvement in

computer technology.'") (quoting *Credit Acceptance Corp. v. Westlake Servs.*, 859 F.3d 1044, 1055 (Fed. Cir. 2017)).  The '873 patent thus fails to meet the standard for patent eligibility under section 101.

*'067 Patent Validity.*  The '067 patent likewise fails step one of the *Alice* inquiry, as it is also drawn to patent ineligible subject matter:  the abstract idea of recording, storing, analyzing, and reporting data.  The patent claims "systems" (claims 1–14) and "methods" (claims 15–28) that collect and organize data performance history by driver, "analyze" the data, store the data in a "dataset," and apply "algorithms" to the resulting information.  (Dkt. No. 1-2.)  Like the '873 patent above, the claims here "do not make a specific improvement on an existing computer-related technology."  *PUREPREDICTIVE, Inc. v. H20.AI, Inc.*, No. 17-CV-03049-WHO, 2017 WL 3721480, at *5 (N.D. Cal. Aug. 29, 2017), *aff'd sub nom. Purepredictive, Inc. v. H2O.ai, Inc.*, 741 F. App'x 802 (Fed. Cir. 2018).  While Omnitracs argues that the claimed "dataset" is directed at improving existing video surveillance technology, the claims do not disclose any particular method of storing the video surveillance data or associating it with other data to form a new dataset.  Instead, the claim refers only to the abstract result of combining timing and driver identity data with event data.  *Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299, 1305 (Fed. Cir. 2018) ("[A] result, even an innovative result, is not itself patentable.").  Nor does Omnitracs save its claim by arguing that a manual process for having a human watch the video events and track the time and driver identity would be impossible, presumably due to its time-consuming nature.  That "a computer can make calculations more quickly than a human does not render a method patent eligible."  *PUREPREDICTIVE*, 2017 WL 3721480, at *5; *see also FairWarning IP, LLC v. Iatric Sys., Inc.*, 839 F.3d 1089, 1095 (Fed. Cir. 2016) ("While the claimed system and method certainly purport to accelerate the process of analyzing audit log data, the speed increase comes from the capabilities of a general-purpose computer, rather than the patented method itself.").

Turning to step two, the claim elements do not add "something more" to "transform" the abstract idea into a "patent-eligible application."  *Alice*, 134 S.Ct. at 2354, 2357.  As noted above, the claims broadly state the functions applied to the data (e.g., associating, analyzing,

storing, generating counseling information and performance scores) at a high level of abstraction without specifying the types of analyses or storage.  *See Digitech Image Techs., LLC v. Elecs. for Imaging*, Inc., 758 F.3d 1344, 1351 (Fed. Cir. 2014). Omnitracs argues that claim construction is necessary for the terms "event record" and "dataset," specifically arguing that "event record" includes video and that "dataset" refers to "a combination of an event record, a vehicle operator identifier and an association between the two" that "includes identity and timing information along with video and vehicle data to perform a mathematical analysis of driver performance." (Dkt. No. 40 at 21.)  Even construing those elements as Omnitracs asserts, the claims still do not recite any inventive concepts.  Like in *Digitech*, the claims ultimately involve "taking two data sets and combining them into a single data set."  758 F.3d at 1351 (invalidating a patent for a method of digital image processing that generated and combined two datasets into a device profile).  The '067 patent is therefore invalid under section 101.

    ***Direct Infringement of the XRS Patents.***  Omnitracs has sufficiently pleaded direct infringement of the '943, '906, and '733 patents (collectively, the "XRS patents").  The Complaint identifies by name multiple products (collectively, the "Accused Products"), which it alleges "meet each and every element of at least one claim" of the XRS patents.  *Disc Disease Sols. Inc. v. VGH Sols., Inc.*, 888 F.3d 1256, 1260 (Fed. Cir. 2018) (quotation marks and citation omitted).  (*See* Dkt. Nos. 1-12, 1-13, 1-14.)

    Motive argues that the Accused Products cannot infringe as a matter of law because they do not meet one of the required elements of the XRS patents' claims.  In relevant part, the XRS patents all incorporate a "composite driver score based on a plurality of a group consisting of . . . occurrences of speeding; occurrences of hard braking; . . . and occurrences of safety violations." (Dkt. No. 1 ¶¶ 200, 243, 285; Dkt. No. 1-12 at 84; Dkt. No. 1-13 at 29; Dkt. No. 1-14 at 41.)  Omnitracs alleges that the Accused Products do exactly this: they calculate a composite driver score — Motive's DRIVE risk score — based on hard braking, speeding, and several other driver behaviors including running a red light, close following, cell phone usage, and drowsiness, among others. (*See, e.g.,* Dkt. No. 1-12 at 84–89.)  Motive argues that the XRS

patents include a Markush group and are therefore limited to only the specific "occurrences" claimed therein. Since the Motive DRIVE risk score includes additional driver behaviors — running a red light, close following, etc., as described above, Motive argues that it cannot infringe the XRS patents. While these other behaviors are not written line-by-line in the patents, the Court cannot say as a matter of law that they are not "occurrences of safety violations." Holding otherwise would require the Court to engage in claim construction, which would be inappropriate at this stage. *See Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1350 (Fed. Cir. 2018). Nor can the Court hold as a matter of law that the patents are limited only to the listed criteria. Doing so would require an analysis of how Omnitracs amended its claim language during the prosecution of the patents, and would thus require claim construction. Simply put, "[a] motion to dismiss is not the proper time to raise claim construction arguments." *Fujitsu Ltd. v. Belkin Int'l, Inc.*, 782 F. Supp. 2d 868, 890 (N.D. Cal. 2011). Omnitracs has therefore sufficiently pleaded direct infringement of the XRS patents.

**Willful and Indirect Infringement of the XRS Patents.** Omnitracs has also adequately pleaded willful and indirect infringement of the XRS patents. *See Sonos, Inc. v. Google LLC*, 591 F. Supp. 3d 638, 643 (N.D. Cal. 2022), *leave to appeal denied*, No. 2022-134, 2022 WL 1486359 (Fed. Cir. May 11, 2022) ("To establish willful patent infringement, the patent owner must prove knowledge of the patent and knowledge of infringement.").

First, Omnitracs alleges that Motive hired Dan Fuglewicz, a named inventor of the XRS patents and former Motive employee, that Fuglewicz "knew of at least the patented technologies when he worked at Motive," and that "[u]pon hiring Mr. Fuglewicz, Motive immediately began using XRS's technology to develop new and improved products," including the Accused Products. (Dkt. No. 1 ¶¶ 3, 24.) Omnitracs further alleges that "Motive's employment of Mr. Fuglewicz enabled Motive's rapid development and marketing of the Accused Products, despite its much later arrival in the fleet management industry." (*Id.* at 3.) Fuglewicz's knowledge and actions in developing the Accused Products are imputed to Motive under traditional principles of vicarious liability. *Meyer v. Holley*, 537 U.S. 280, 285 (2003). Motive has therefore satisfied

the knowledge component of its willful and indirect infringement claims as to the XRS patents. *Cf. Splunk Inc. v. Cribl, Inc.*, 662 F. Supp. 3d 1029, 1037 (N.D. Cal. 2023) (declining to infer that senior technical employees who "were not named inventors of the asserted patents" had sufficient knowledge).

Second, Omnitracs alleges that Motive provides its customers "instructions that direct the customers and end users to use the Accused Products in an infringing manner." (Dkt. No. 1 ¶ 68.) The Complaint alleges that Motive publicly shares step-by-step guides, offers technical support, and provides videos instructing customers and end users to use the Accused Products in an infringing manner. (*See, e.g., id.*, ¶¶ 61–70, 102.) "The Federal Circuit has found it enough to assert that a defendant, among other things, 'provid[ed] instructions, support, and technical assistance' to another in committing infringement." *Core Optical Techs., LLC v. Juniper Networks Inc.*, 562 F. Supp. 3d 376, 382 (N.D. Cal. 2021) (quoting *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1355 (Fed. Cir. 2018)). Omnitracs plausibly alleges that Motive instructs its customers how to use the Accused Products in an infringing manner and has thus "intended to cause the acts that led to infringement[.]" *Golden Blount, Inc. v. Robert H. Peterson Co.*, 438 F.3d 1354, 1364 (Fed. Cir. 2006).

***Willful and Indirect Pre-Suit Infringement of the '060 and '130 Patents.***[1] Omnitracs has not stated a plausible claim for willful pre-suit infringement of the '060 and '130 patents because it has failed to plead that Motive knew of these patents prior to receiving the Complaint. Omnitracs alleges that Motive hired unnamed former employees who had knowledge of the patents. (*See, e.g.,* Dkt. No. 1 ¶ 59.) This is insufficient to establish Motive's knowledge. *See Splunk*, 662 F. Supp. 3d at 1038. Although Omnitracs has adequately pleaded knowledge of the XRS patents, that is not indicative of whether Motive also knew of the '060 or '130 patents. *See Sonos*, 591 F. Supp.3d at 643 ("Mere knowledge of a 'patent family' or the plaintiff's 'patent portfolio' is not enough."). A high probability that Motive knew of and improperly used the

---

[1] Having found the '067 patent invalid, the Court does not analyze whether Omnitracs has stated a plausible claim for infringement.

6

XRS patents does not establish a high probability that it had knowledge of or was willfully blind to the '060 or '130 patents. Since Omnitracs does not plausibly allege that Motive had pre-suit knowledge of the '060 and '130 patents, it fails to state a claim for pre-suit willful or indirect infringement.

*Willful and Indirect Post-Suit Infringement of the '060 and '130 Patents.* On the other hand, Omnitracs has adequately pleaded post-suit knowledge of the '060 and '130 patents. (*See, e.g.*, Dkt. No. 1 ¶¶ 60–61.) Although the Federal Circuit has not directly spoken on the issue, most district courts have held that a complaint can itself be the source of knowledge necessary to sustain an indirect infringement claim. *See, e.g., Lyda v. CBS Interactive, Inc.*, No. 16-CV-06592-JSW, 2017 WL 783807, at *3 (N.D. Cal. Mar. 1, 2017) (collecting cases). This Court agrees with the majority view, at least as applied here. The Complaint describes in detail how the Alleged Products infringe the patents, which are themselves named and described in the Complaint. If Motive had sent Omnitracs a letter with this same information minutes before filing suit, it would meet the knowledge requirement. It is illogical for Motive to avoid liability simply because it instead learned of the patents from the Complaint itself. *See Traxcell Techs. LLC v. Google LLC*, No. 22-CV-04807-JSC, 2022 WL 17072015, at *6 (N.D. Cal. Nov. 17, 2022). Once Motive was served with the Complaint, it knew of the patents. As described above, the Complaint adequately alleges specific intent to infringe and induce infringement. Omnitacs thus adequately alleges that, as of the Complaint, Motive has willfully and indirectly infringed the '060 and '130 patents.

In conclusion, Motive's Motion to Dismiss Counts IV ('873 patent) and II ('067 patent) is **GRANTED**; its Motion to Dismiss Counts V ('943 patent), VI ('906 patent), and VII ('733 patent) is **DENIED**; and its Motion to Dismiss Counts I ('060 patent) and III ('130 patent) is **GRANTED** as to Omnitracs's pre-suit indirect and willful infringement claims and **DENIED** as to Omnitracs's post-suit indirect and willful infringement claims. The Court lacks information about whether Omnitracs could amend to cure the identified defects concerning the pre-suit indirect and willful infringement claims, but because Omnitracs has not previously had an

opportunity to address this issue through amendment, the Motions to Dismiss Counts I and III are **GRANTED WITH LEAVE TO AMEND**. If Omnitracs wishes to file an amended complaint, it must do so by March 13, 2024.

**IT IS SO ORDERED.**

Dated: February 12, 2024

RITA F. LIN
United States District Judge