UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| OMNITRACS, LLC, et al.,<br>                    Plaintiffs,<br>        v.<br><br>MOTIVE TECHNOLOGIES, INC.,<br>                    Defendant. | Case No.  23-cv-05261-RFL<br><br>**FINAL PRELIMINARY JURY INSTRUCTIONS** |

**INSTRUCTION NO. 1:**
**DUTY OF THE JURY**

Members of the jury: You are now the jury in this case. It is my duty to instruct you on the law.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

At the end of the trial, I will give you final instructions. It is the final instructions that will govern your duties.

Please do not read into these instructions, or anything I may say or do, that I have an opinion regarding the evidence or what your verdict should be.

**INSTRUCTION NO. 2:**
**PATENT OVERVIEW**

This case involves a dispute relating to United States patents. Before summarizing the positions of the parties and the legal issues involved in the dispute, let me take a moment to explain what a patent is and how one is obtained.

Patents are granted by the United States Patent and Trademark Office (sometimes called "the PTO"). A valid United States patent gives the patent holder the right to prevent others from making, using, offering to sell, or selling the patented invention within the United States, or from importing it into the United States, during the term of the patent without the patent holder's permission. A violation of the patent holder's rights is called infringement. The patent holder may try to enforce a patent against persons believed to be infringers by means of a lawsuit filed in federal court.

To obtain a patent one must file an application with the PTO. The process of obtaining a patent is called patent prosecution. The PTO is an agency of the federal government and employs trained patent examiners who review applications for patents. The application includes what is called a "specification," which must contain a written description of the claimed invention telling what the invention is, how it works, how to make it and how to use it so others skilled in the field will know how to make or use it. The specification concludes with one or more numbered sentences. These are the patent "claims." When the patent is eventually granted by the PTO, the claims define the boundaries of its protection and give notice to the public of those boundaries.

After the applicant files the application, a PTO patent examiner reviews the patent application to determine whether the claims are patentable and whether the specification adequately describes the invention claimed. In examining a patent application, the patent examiner reviews information about the state of the technology at the time the application was filed. As part of that effort, the patent examiner searches for and reviews information that is publicly available, submitted by the applicant, or both. That information is called "prior art." Prior art is defined by law, and I will give you at a later time specific instructions as to what constitutes prior art. A patent lists the prior art that the examiner considered; this list is called the "cited references."

After the prior art search and examination of the application, the patent examiner then informs the applicant in writing what the examiner has found and whether any claim is patentable, and thus will be "allowed." This writing from the patent examiner is called an "office action." If the examiner rejects the claims, the applicant has an opportunity to respond and sometimes changes the claims or submits new claims. This process, which takes place only between the examiner and the patent applicant, may go back and forth for some time until the examiner is satisfied that the application and claims meet the requirements for a patent. Sometimes, patents are issued after appeals with the PTO or to a court. The papers generated during this time of communicating back and forth between the patent examiner and the applicant make up what is called the "prosecution history." All of this material becomes available to the public no later than the date when the patent issues.

The fact that the PTO grants a patent does not necessarily mean that any invention claimed in the patent, in fact, deserves the protection of a patent. For example, the PTO may not have had available to it all the information that will be presented to you. A person accused of infringement has the right to argue here in federal court that a claimed invention in the patent is invalid because it does not meet the requirements for a patent.

## INSTRUCTION NO. 3:
## PARTY CONTENTIONS

To help you follow the evidence, I will give you a brief summary of the positions of the parties:

The parties in this case are Omnitracs, LLC, XRS Corporation, SmartDrive Systems, Inc. and Motive Technologies, Inc.  Omnitracs, LLC is the parent company of XRS and SmartDrive. XRS and SmartDrive are the owners of U.S. Patent No. 9,402,060, U.S. Patent No. 9,014,906, U.S. Patent No. 9,390,628, and U.S. Patent No. 9,911,253.  For convenience, the parties and I will often refer to each patent by the last three numbers of its patent number: the '060 patent, the '906 patent, the '628 patent, or the '253 patent.  These patents also may be referred to collectively as the Asserted Patents.

Omnitracs, LLC, XRS Corporation, and SmartDrive Systems, Inc. allege patent infringement by Motive Technologies, Inc.  As I go through these instructions with you, I will refer to the plaintiffs jointly as "Omnitracs" and Motive Technologies as "Motive."

Omnitracs filed suit in this court seeking money damages from Motive for allegedly infringing the Asserted Patents by making, importing, using, selling or offering for sale systems and methods that Omnitracs argues are covered by Claims 1 and 18 of the '060 Patent; Claims 1, 10, and 15 of the '906 Patent; Claims 15, 17, and 18 of the '628 Patent; and Claims 1 and 11 of the '253 Patent. Collectively, these claims may be referred to as the Asserted Claims.

Omnitracs has the burden of proving these claims by a preponderance of the evidence.

Motive denies that it infringes the Asserted Claims of the Asserted Patents, and also contends that certain of the Asserted Claims are invalid.  Motive has the burden of proving invalidity by clear and convincing evidence.

Before you decide whether Motive has infringed the Asserted Claims of the Asserted patents or whether the Asserted Claims are invalid, you will need to understand the patent claims.  As I mentioned, the patent claims are numbered sentences at the end of the patent that describe the boundaries of the patent's protection.  It is my job as judge to explain to you the meaning of any language in the claims that needs interpretation.

I have already determined the meaning of certain terms of the Asserted Claims of the Asserted Patents.  You will be given a document reflecting those meanings.  For a claim term for which I have not provided a definition, you should apply the ordinary meaning.  You are to apply my definitions of these terms throughout this case.  However, my interpretation of the language of the claims should not be taken as an indication that I have a view regarding issues such as infringement and invalidity.  Those issues are yours to decide.  I will provide you with more detailed instructions on the meaning of the claims before you retire to deliberate your verdict.

**INSTRUCTION NO. 5:**
**BURDEN OF PROOF – PREPONDERANCE OF THE EVIDENCE**


When a party has the burden of proving any claim by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim is more probably true than not true.

You should base your decision on all of the evidence, regardless of which party presented it.

**INSTRUCTION NO. 6:**
**BURDEN OF PROOF – CLEAR AND CONVINCING EVIDENCE**

When a party has the burden of proving any claim or defense by clear and convincing evidence, it means that the party must present evidence that leaves you with a firm belief or conviction that it is highly probable that the factual contentions of the claim or defense are true. This is a higher standard of proof than proof by a preponderance of the evidence, but it does not require proof beyond a reasonable doubt.

**INSTRUCTION NO. 7:**
**WHAT IS EVIDENCE**

The evidence you are to consider in deciding what the facts are consists of:

1.  the sworn testimony of any witness;

2.  the exhibits that are admitted into evidence;

3.  any facts to which the lawyers have agreed; and

4.  any facts that I may instruct you to accept as proved.

## INSTRUCTION NO. 8:
## WHAT IS NOT EVIDENCE

In reaching your verdict, you may consider only the admitted evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

(1) Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they may say in their opening statements, closing arguments and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

(2) Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

(3) Testimony that is excluded or stricken, or that you are instructed to disregard, is not evidence and must not be considered. In addition, some evidence may be received only for a limited purpose; when I instruct you to consider certain evidence only for a limited purpose, you must do so, and you may not consider that evidence for any other purpose.

(4) Demonstrative exhibits are not evidence. Certain charts and graphics have been used to illustrate testimony from witnesses. Unless I have specifically admitted them into evidence, these charts and graphics are not themselves evidence even if they refer to, identify, or summarize evidence.

(5) Anything you may see or hear when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

**INSTRUCTION NO. 9:**
**DIRECT AND CIRCUMSTANTIAL EVIDENCE**

Evidence may be direct or circumstantial. Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did. Circumstantial evidence is proof of one or more facts from which you could find another fact.

By way of example, if you wake up in the morning and see that the sidewalk is wet, you may find from that fact that it rained during the night. However, other evidence, such as a turned-on garden hose, may provide a different explanation for the presence of water on the sidewalk. Therefore, before you decide that a fact has been proved by circumstantial evidence, you must consider all the evidence in the light of reason, experience, and common sense.

You should consider both kinds of evidence. The law makes no distinction between the weight to be given to either direct or circumstantial evidence. It is for you to decide how much weight to give to any evidence.

**INSTRUCTION NO. 10:**
**CREDIBILITY OF WITNESSES**

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it.

In considering the testimony of any witness, you may take into account:

    (1)    the opportunity and ability of the witness to see or hear or know the things testified to;

    (2)    the witness's memory;

    (3)    the witness's manner while testifying;

    (4)    the witness's interest in the outcome of the case, if any;

    (5)    the witness's bias or prejudice, if any;

    (6)    whether other evidence contradicted the witness's testimony;

    (7)    the reasonableness of the witness's testimony in light of all the evidence; and

    (8)    any other factors that bear on believability.

Sometimes a witness may say something that is not consistent with something else he or she said. Sometimes different witnesses will give different versions of what happened. People often forget things or make mistakes in what they remember. Also, two people may see the same event but remember it differently. You may consider these differences, but do not decide that testimony is untrue just because it differs from other testimony.

However, if you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said. On the other hand, if you think the witness testified untruthfully about some things but told the truth about others, you may accept the part you think is true and ignore the rest.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify. What is important is how believable the witnesses were, and how much weight you think their testimony deserves.

**INSTRUCTION NO. 11:**
**DEPOSITION TESTIMONY**

A deposition is the sworn testimony of a witness taken before trial. The witness is placed under oath to tell the truth and lawyers for each party may ask questions. The questions and answers are recorded.

The parties previously took depositions and may present testimony from those depositions during the trial. Insofar as possible, you should consider deposition testimony, presented to you in court in lieu of live testimony, in the same way as if the witness had been present to testify.

**INSTRUCTION NO. 12:**
**EXPERT TESTIMONY**

You will hear testimony from Dr. Stephen Wicker, Jim Bergman, Christopher Wilson, Scott Andrews, David Znidarsic, David Franklyn, and Carrie Distler, who will testify about their opinions and the reasons for those opinions. This opinion testimony is allowed, because of the specialized knowledge, skill, experience, training, or education of this witness.

Such opinion testimony should be judged like any other testimony. You may accept it or reject it and give it as much weight as you think it deserves, considering the witness's specialized knowledge, skill, experience, training, or education, the reasons given for the opinion, and all the other evidence in the case.

## INSTRUCTION NO. 13:
## OBJECTIONS

There are rules of evidence that control what can be received into evidence. When a lawyer asks a question or offers an exhibit into evidence and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object. If I overrule the objection, the question may be answered, or the exhibit received. If I sustain the objection, the question cannot be answered, and the exhibit cannot be received. Whenever I sustain an objection to a question, you must ignore the question and must not guess what the answer might have been.

Sometimes I may order that evidence be stricken from the record and that you disregard or ignore that evidence. That means when you are deciding the case, you must not consider the stricken evidence for any purpose.

## INSTRUCTION NO. 14:
## BENCH CONFERENCES

From time to time during the trial, it may become necessary for me to talk with the attorneys out of the hearing of the jury, either by having a conference at the bench when the jury is present in the courtroom, or by calling a recess. Please understand that while you are waiting, we are working. The purpose of these conferences is not to keep relevant information from you, but to decide how certain evidence is to be treated under the rules of evidence and to avoid confusion and error.

Of course, we will do what we can to keep the number and length of these conferences to a minimum. I may not always grant an attorney's request for a conference. Do not consider my granting or denying a request for a conference as any indication of my opinion of the case or of what your verdict should be.

**INSTRUCTION NO. 15:**
**TAKING NOTES**

If you wish, you may take notes to help you remember the evidence. If you do take notes, please keep them to yourself until you go to the jury room to decide the case. Do not let notetaking distract you. When you leave, your notes should be left in the courtroom. No one will read your notes.

Whether or not you take notes, you should rely on your own memory of the evidence. Notes are only to assist your memory. You should not be overly influenced by your notes or those of other jurors.

## INSTRUCTION NO. 16:
## CONDUCT OF THE JURY

I will now say a few words about your conduct as jurors.

First, keep an open mind throughout the trial, and do not decide what the verdict should be until you and your fellow jurors have completed your deliberations at the end of the case.

Second, because you must decide this case based only on the evidence received in the case and on my instructions as to the law that applies, you must not be exposed to any other information about the case or to the issues it involves during the course of your jury duty. Thus, until the end of the case or unless I tell you otherwise:

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it. This includes discussing the case in person, in writing, by phone, tablet, or computer, or any other electronic means, via email, text messaging, or any internet chat room, blog, website or application, including but not limited to Facebook, YouTube, X (formerly known as "Twitter"), Instagram, LinkedIn, Snapchat, Tiktok, or any other forms of social media. This applies to communicating with your fellow jurors until I give you the case for deliberation, and it applies to communicating with everyone else including your family members, your employer, the media or press, and the people involved in the trial, although you may notify your family and your employer that you have been seated as a juror in the case, and how long you expect the trial to last. But, if you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and report the contact to the court.

Because you will receive all the evidence and legal instruction you properly may consider to return a verdict: do not read, watch or listen to any news or media accounts or commentary about the case or anything to do with it; do not do any research, such as consulting dictionaries, searching the Internet, or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own. Do not visit or view any place discussed in this case, and do not use the Internet or any other resource to search for or view any place discussed during the trial. Also, do not do any research about this case, the law, or the people involved—including the parties, the witnesses or the lawyers—until you have been excused as jurors. If you happen to read or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

These rules protect each party's right to have this case decided only on evidence that has been presented here in court. Witnesses here in court take an oath to tell the truth, and the accuracy of their testimony is tested through the trial process. If you do any research or investigation outside the courtroom, or gain any information through improper communications, then your verdict may be influenced by inaccurate, incomplete or misleading information that has not been tested by the trial process. Each of the parties is entitled to a fair trial by an impartial jury, and if you decide the case based on information not presented in court, you will have denied the parties a fair trial. Remember, you have taken an oath to follow the rules, and it is very important that you follow these rules.

A juror who violates these restrictions jeopardizes the fairness of these proceedings, and a mistrial could result that would require the entire trial process to start over. If any juror is exposed to any outside information, please notify the court immediately.

## INSTRUCTION NO. 17:
## SPEAKING WITH ATTORNEYS

The parties are instructed not to speak with you during the course of the trial except as allowed here in the courtroom. There should be no improper communications between the jurors and the attorneys or the witnesses in the case. Therefore, they are instructed to avoid any conversations with you, even the exchange of polite greetings.

If someone sees you speaking with one of the attorneys or witnesses in the hallway, it might be misinterpreted as an improper communication. To avoid that, they are admonished to have no contact with you. Witnesses will often be waiting outside the courtroom in the hall to be called to testify. They are also instructed not to have any conversation with you and keep a discrete distance from the jurors in the hallway and avoid using the same elevator with jurors.

Please do not interpret any lack of acknowledgment by counsel or the witnesses as rudeness or discourtesy. It is simply to avoid any misunderstandings.

## INSTRUCTION NO. 18:
## JUROR QUESTIONS

If, during the trial, you have a question that you believe should be asked of a witness, you may write out the question. Put it on a separate sheet of paper with your juror number on it. After the questioning of that witness by the attorneys is complete, I will give you an opportunity to hand your question to the courtroom deputy. I will discuss the question with the attorneys and decide whether it may be asked. Do not feel slighted or disappointed if your question is not asked. Your question may not be asked for a variety of reasons, including the reason that the question may call for an answer that is inadmissible for legal reasons. Also, do not guess the reason your question was not asked or speculate about what the answer might have been. Always remember that you are not advocates for one side or the other in this case. You are impartial judges of the facts.

## INSTRUCTION NO. 19:
## OUTLINE OF TRIAL

Trials will proceed in the following way.  Each side may make an opening statement.  An opening statement is not evidence.  It is simply an outline to help you understand what that party expects the evidence will show.

The presentation of evidence will then begin.  Witnesses will take the witness stand, and documents will be offered and admitted into evidence.  There are two standards of proof that you will apply to the evidence, depending on the issue you are deciding.  On some issues, you must decide whether something is more likely true than not.  On other issues you must use a higher standard and decide whether it is highly probable that something is true.

Omnitracs will present their evidence on their contentions that the Asserted Claims of the '060, '906, '628, and '253 Patents are infringed by Motive and that infringement of the '060, '906 and '628 patents has been and continues to be willful. These witnesses will be questioned by Omnitracs's counsel in what is called direct examination.  After the direct examination of a witness is completed, the opposing side has an opportunity to cross-examine the witness. Finally, Omnitracs's counsel has the opportunity to question the witness one more time in what is called redirect examination. To prove infringement of any claim, Omnitracs must persuade you that it is more likely than not that Motive has infringed that claim.  To prove willful infringement, Omnitracs must persuade you that it is more likely than not that Motive has willfully infringed that claim.

After Omnitracs has presented their witnesses, Motive will call its witnesses, who will also be examined and subject to cross-examination and redirect.  Motive will present its evidence that Asserted Claims of the Asserted Patents are not infringed and that the '060, '906 and '628 patents have not been willfully infringed.  Motive will further present its evidence that the Asserted Claims of the Asserted Patents are invalid.  To prove invalidity of any claim, Motive must persuade you that it is highly probable that the claim is invalid.

Omnitracs will then return and will put on evidence responding to Motive's contention that the Asserted Claims of the Asserted Patents are invalid.  Omnitracs will also have the option to put on what is referred to as "rebuttal" evidence to any evidence offered by Motive of non-infringement or lack of willfulness.

Finally, Motive will have the option to put on "rebuttal" evidence to any evidence offered by Omnitracs on the validity of any of the Asserted Claims of the Asserted Patents.

Because the evidence is introduced piecemeal, you need to keep an open mind as the evidence comes in and wait for all the evidence before you make any decisions.  In other words, you should keep an open mind throughout the entire trial.  After the evidence has been presented, I will instruct you on the law that applies to the case, and the attorneys will make closing arguments.  After closing arguments, you will go to the jury room to deliberate on your verdict.