**INSTRUCTION NO. 1:**
**DUTY OF JURY**

Members of the Jury: Now that you have heard all of the evidence, it is my duty to instruct you on the law that applies to this case.

Each of you has received a copy of these instructions that you may take with you to the jury room to consult during your deliberations.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

Please do not read into these instructions or anything that I may say or do or have said or done that I have an opinion regarding the evidence or what your verdict should be.

**INSTRUCTION NO. 2:**
**SUMMARY OF CONTENTIONS**

To help you follow the evidence, I will now give you a summary of the positions of the parties.

The parties in this case are Omnitracs, LLC, XRS Corporation, and SmartDrive Systems, Inc. (collectively, "Omnitracs") and the alleged infringer Motive Technologies, Inc. ("Motive").

The case involves United States Patent Number(s) U.S. Patent No. 9,402,060, U.S. Patent No. 9,014,906, U.S. Patent No. 9,390,628, and U.S. Patent No. 9,911,253. For convenience, the parties and I will often refer to these patents by the last three numbers of their patent numbers: the '060 patent, the '906 patent; the '628 patent; and the '253 patent. They may be referred to collectively as the Asserted Patents.

Omnitracs filed suit in this court seeking money damages from Motive for allegedly infringing the '060, '906, '628, and '253 patents by making, importing, using, selling, and offering for sale products and methods that Omnitracs argues are covered by Claims 1 and 12 of the '060 Patent; Claims 1, 10, and 15 of the '906 Patent; Claims 15, 17, and 18 of the '628 Patent; and Claims 1 and 11 of the '253 Patent. Collectively, these claims may be referred to as the Asserted Claims.

The products and services that are alleged to infringe one or more of the Asserted Claims include the following:

1. Motive's Fleet Dashboard

2. Motive's AI Dashcam

3.   Motive's Smart Dashcam

4.   Motive's AI Omnicam

5.   Motive's Vehicle Gateway ELD ("Vehicle Gateway")

6.   Motive's Fleet Application ("Fleet App")

7.   Motive's Electronic Logbook Application

8.   Motive's Driver Application ("Driver App")

Omnitracs further asserts that Motive's infringement of the '628, '906, and '060 Patents is willful.

Motive denies that it has infringed or willfully infringed the Asserted Claims of the Asserted Patents. Motive also argues that those claims are invalid. Invalidity is a defense to infringement.

Your job will be to decide whether the Asserted Claims of the Asserted Patents have been infringed and whether those claims are invalid. If you decide that any claim of the Asserted Patents has been infringed and is not invalid, you will then need to decide any money damages to be awarded to Omnitracs to compensate it for the infringement.

If you decide that any asserted claim of the '060, '906, or '628 Patents has been infringed and is not invalid, you will also need to make a finding as to whether the infringement was willful. If you decide that any infringement was willful, that decision should not affect any damage award you give. I will take willfulness into account later.

Before you decide whether Motive has infringed the claims of the patent or whether the claims are invalid, you will need to understand the patent claims. As I mentioned, the patent claims are numbered sentences at the end of the patent that describe the boundaries of the patent's protection. It is my job as judge to explain to you the meaning of any language in the claims that needs interpretation.

I have already determined the meaning of certain terms of the claims of the Asserted Patents. I will give you an instruction reflecting those meanings. For a claim term for which I have not provided a definition, you should apply the ordinary meaning. You are to apply my definitions of these terms throughout this case. However, my interpretation of the language of the claims should not be taken as an indication that I have a view regarding issues such as infringement and invalidity. Those issues are yours to decide. I will provide you with more detailed instructions on the meaning of the claims before you retire to deliberate your verdict.

**INSTRUCTION NO. 3:**
**BURDEN OF PROOF – PREPONDERANCE OF THE EVIDENCE**

When a party has the burden of proving any claim by a preponderance of the evidence, it

means you must be persuaded by the evidence that the claim is more probably true than not true.

You should base your decision on all of the evidence, regardless of which party presented it.

## INSTRUCTION NO. 4:
## BURDEN OF PROOF – CLEAR AND CONVINCING EVIDENCE

When a party has the burden of proving any claim or defense by clear and convincing evidence, it means that the party must present evidence that leaves you with a firm belief or conviction that it is highly probable that the factual contentions of the claim or defense are true. This is a higher standard of proof than proof by a preponderance of the evidence, but it does not require proof beyond a reasonable doubt.

## INSTRUCTION NO. 5:
## WHAT IS EVIDENCE

The evidence you are to consider in deciding what the facts are consists of:

1. the sworn testimony of any witness;

2. the exhibits that are admitted into evidence;

3. any facts to which the lawyers have agreed; and

4. any facts that I may instruct you to accept as proved.

## INSTRUCTION NO. 6:
## WHAT IS NOT EVIDENCE

In reaching your verdict, you may consider only the admitted evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

(1) Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they have said in their opening statements, closing arguments and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

(2) Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

(3) Testimony that is excluded or stricken, or that you have been instructed to disregard,

is not evidence and must not be considered. In addition, some evidence was received only for a limited purpose; when I have instructed you to consider certain evidence only for a limited purpose, you must do so, and you may not consider that evidence for any other purpose.

(4) Demonstrative exhibits are not evidence. Certain charts and graphics have been used to illustrate testimony from witnesses. Unless I have specifically admitted them into evidence, these charts and graphics are not themselves evidence even if they refer to, identify, or summarize evidence.

(5) Anything you may have seen or heard when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

## INSTRUCTION NO. 7:
## DIRECT AND CIRCUMSTANTIAL EVIDENCE

Evidence may be direct or circumstantial. Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did. Circumstantial evidence is proof of one or more facts from which you could find another fact.

By way of example, if you wake up in the morning and see that the sidewalk is wet, you may find from that fact that it rained during the night. However, other evidence, such as a turned-on garden hose, may provide a different explanation for the presence of water on the sidewalk. Therefore, before you decide that a fact has been proved by circumstantial evidence, you must consider all the evidence in the light of reason, experience, and common sense.

You should consider both kinds of evidence. The law makes no distinction between the weight to be given to either direct or circumstantial evidence. It is for you to decide how much weight to give to any evidence.

## INSTRUCTION NO. 8:
## CREDIBILITY OF WITNESSES

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it.

In considering the testimony of any witness, you may take into account:

(1) the opportunity and ability of the witness to see or hear or know the things testified to;

(2) the witness's memory;

(3) the witness's manner while testifying;

3

(4)    the witness's interest in the outcome of the case, if any;

(5)    the witness's bias or prejudice, if any;

(6)    whether other evidence contradicted the witness's testimony;

(7)    the reasonableness of the witness's testimony in light of all the evidence; and

(8)    any other factors that bear on believability.

Sometimes a witness may say something that is not consistent with something else he or she said. Sometimes different witnesses will give different versions of what happened.  People often forget things or make mistakes in what they remember.  Also, two people may see the same event but remember it differently.  You may consider these differences, but do not decide that testimony is untrue just because it differs from other testimony.

However, if you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said.  On the other hand, if you think the witness testified untruthfully about some things but told the truth about others, you may accept the part you think is true and ignore the rest.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify.  What is important is how believable the witnesses were, and how much weight you think their testimony deserves.

## INSTRUCTION NO. 9:
## DEPOSITION TESTIMONY

A deposition is the sworn testimony of a witness taken before trial. The witness is placed under oath to tell the truth and lawyers for each party may ask questions. The questions and answers are recorded.

Depositions were presented during the trial. Insofar as possible, you should consider deposition testimony, presented to you in court in lieu of live testimony, in the same way as if the witness had been present to testify.

## INSTRUCTION NO. 10:
## EXPERT TESTIMONY

You have heard testimony from Stephen Wicker, Jim Bergman, Christopher Wilson, Scott Andrews, David Znidarsic, David Franklyn, and Carrie Distler, who testified about their opinions and the reasons for those opinions. This opinion testimony was allowed, because of the specialized knowledge, skill, experience, training, or education of each witness.

Such opinion testimony should be judged like any other testimony. You may accept it or

reject it and give it as much weight as you think it deserves, considering the witness's specialized knowledge, skill, experience, training, or education, the reasons given for the opinion, and all the other evidence in the case.

## INSTRUCTION NO. 11:
## INTERPRETATION OF CLAIMS

Before you decide whether Motive has infringed the Asserted Claims of the Asserted Patents or whether the claims are invalid, you will need to understand the patent claims. As I mentioned at the beginning of the case, the patent claims are numbered sentences at the end of the patent that describes the boundaries of the patent's protection. It is my job as judge to explain to you the meaning of any language in the claims that needs interpretation.

I have interpreted the meaning of some of the language in the patent claims involved in this case. You must accept those interpretations as correct. My interpretation of the language should not be taken as an indication that I have a view regarding the issues of infringement and invalidity. The decisions regarding infringement and invalidity are yours to make.

When deciding the issues you are being asked to decide, you must apply my definitions of the following claim terms:

The term "**[facilitate] / [facilitating, with the processor,] wireless communication of information between the vehicle event recorder and a remotely located computing device using HTTP**," as it appears in the asserted claims of the '060 Patent, means "facilitate wireless communication of the information between a web server in the vehicle event recorder and a remotely located computing device using HTTP."

The term "**hours of service record**," as it appears in the asserted claims of the '906 and '628 Patents, means "record[s] that include hours of service information for a driver and any co-driver(s)."

The term "**electronic driver scorecard**," as it appears in the asserted claims of the '628 patent, means "electronic presentation of driver scores."

The term "**alphanumerical ratings**," as it appears in the '628 Patent, means "number ratings, letter ratings, or ratings containing both numbers and letters."

The term "**a composite driver score based on a plurality of a group consisting of: fuel efficiency; occurrences of stop idle; occurrences of speeding; occurrences of hard braking; occurrences of high speed braking; and occurrences of safety violations**," as it appears in the asserted claims of the '906 Patent, is a closed group that encompasses a composite driver score based on two or more factors from the recited group and no other unrecited factors.

The term "**frame(s) of visual information**," as it appears in the asserted claims of the '253 Patent, means "video frames."

**INSTRUCTION NO. 12:**
**TYPES OF PATENT CLAIMS**

This case involves two types of patent claims: independent claims and dependent claims.

An "independent claim" sets forth all of the requirements that must be met in order to be covered by that claim. Thus, it is not necessary to look at any other claim to determine what an independent claim covers.

In this case, Claims 1 and 10 of the '906 Patent, Claim 15 of the '628 Patent, Claim 1 of the '060 Patent, and Claims 1 and 11 of the '253 Patent are each independent claims.

The remaining Asserted Claims, Claim 15 of the '906 Patent, Claims 17 and 18 of the '628 Patent, and Claim 12 of the '060 Patent, are "dependent claims."

A dependent claim does not itself recite all of the requirements of the claim but refers to another claim for some of its requirements. In this way, the claim "depends" on another claim. A dependent claim incorporates all of the requirements of the claim to which it refers. The dependent claim then adds its own additional requirements. To determine what a dependent claim covers, it is necessary to look at both the dependent claim and any other claim to which it refers. A product or process that meets all of the requirements of both the dependent claim and the claim to which it refers is covered by that dependent claim.


**INSTRUCTION NO. 13:**
**INFRINGEMENT – OVERVIEW**

I will now instruct you on the rules you must follow in deciding whether Omnitracs has proven that Motive has infringed one or more of the Asserted Claims of the Asserted Patents. To prove infringement of any claim, Omnitracs must persuade you that it is more likely than not that Motive has infringed that claim.


**INSTRUCTION NO. 14:**
**DIRECT INFRINGEMENT**

A patent's claims define what is covered by the patent. A product or method directly infringes a patent if it is covered by at least one claim of the patent.

Deciding whether a claim has been directly infringed is a two-step process. The first step is to decide the meaning of the patent claim. I have already made this decision, and I have already instructed you as to the meaning of the terms in the asserted patent claims. The second step is to decide whether Motive has made, used, sold, offered for sale, or imported within the United States a product or method covered by a claim of the Asserted Patents. If it has, it infringes. You, the jury, make this decision.

With one exception, you must consider each of the asserted claims of the patent individually,

6

and decide whether Motive's products or methods infringe that claim. The one exception to considering claims individually concerns dependent claims. A dependent claim includes all of the requirements of a particular independent claim, plus additional requirements of its own. As a result, if you find that an independent claim is not infringed, you must also find that its dependent claims are not infringed. On the other hand, if you find that an independent claim has been infringed, you must still separately decide whether the additional requirements of its dependent claims have also been infringed.

You have heard evidence about both Omnitracs' commercial products and methods and Motive's accused products and methods. However, in deciding the issue of infringement you may not compare Motive's accused products or methods to Omnitracs' commercial products or methods. Rather, you must compare Motive's accused products and methods to the claims of the Asserted Patents when making your decision regarding infringement.

Whether or not Motive knew its products or methods infringed or even knew of the patent does not matter in determining direct infringement.

There are two ways in which a patent claim may be directly infringed. A claim may be "literally" infringed, or it may be infringed under the "doctrine of equivalents." The following instructions will provide more detail on these two types of direct infringement.

## INSTRUCTION NO. 15:
## LITERAL INFRINGEMENT

To decide whether Motive's products or methods literally infringe an asserted claim of the Asserted Patents, you must compare that product or method with the patent claim and determine whether every requirement of the claim is included in that product or method. If so, Motive's product or method literally infringes that claim. If, however, Motive's product or method does not have every requirement in the patent claim, Motive's product or method does not literally infringe that claim. You must decide literal infringement for each asserted claim separately.

If the patent claim uses the term "comprising," that patent claim is to be understood as an open claim. An open claim is infringed as long as every requirement in the claim is present in Motive's product or method. The fact that Motive's product or method also includes other parts or steps will not avoid infringement, as long as it has every requirement in the patent claim.

## INSTRUCTION NO. 16:
## INFRINGEMENT UNDER THE DOCTRINE OF EQUIVALENTS

If you decide that Motive's product or method does not literally infringe an asserted patent claim, you must then decide whether that product or method infringes the asserted claim under what is called the "doctrine of equivalents."

Under the doctrine of equivalents, the product or method infringes an asserted patent claim if it includes parts or steps that are identical or equivalent to the requirements of the claim. If the

product or method is missing an identical or equivalent part or step to even one requirement of the asserted patent claim, the product or method cannot infringe the claim under the doctrine of equivalents. Thus, in making your decision under the doctrine of equivalents, you must look at each individual requirement of the asserted patent claim and decide whether the product or method has either an identical or equivalent part or step to that individual claim requirement.

A part or step of a product or method is equivalent to a requirement of an asserted claim if a person of ordinary skill in the field would think that the differences between the part or step and the requirement were not substantial as of the time of the alleged infringement.

Changes in technique or improvements made possible by technology developed after the patent application is filed may still be equivalent for the purposes of the doctrine of equivalents if it still meets the other requirements of the doctrine of equivalents set forth in this instruction.

One way to decide whether any difference between a requirement of an asserted claim and a part or step of the product or method is not substantial is to consider whether, as of the time of the alleged infringement, the part or step of the product or method performed substantially the same function, in substantially the same way, to achieve substantially the same result as the requirement in the patent claim.

## INSTRUCTION NO. 17:
## LIMITATIONS ON THE DOCTRINE OF EQUIVALENTS

Because Omnitracs made certain claim changes or statements during the patent application process for certain of the Asserted patents, the doctrine of equivalents analysis cannot be applied to the following requirements of the asserted claims:

For claims 1 and 10 of the '906 patent, the doctrine of equivalents cannot be applied to the claim limitation reciting "wherein the driver summary electronic report includes a composite driver score based on a plurality of a group consisting of: fuel efficiency; occurrences of stop idle; occurrences of speeding; occurrences of hard braking; occurrences of high speed braking; and occurrences of safety violations."

Unless each of these requirements is literally present within Motive's Accused Products or methods, there can be no infringement of those claims.

## INSTRUCTION NO. 18:
## JOINT INFRINGEMENT

Motive asserts that neither Motive nor its customers has directly infringed the Asserted claims of the '628 Patent because neither Motive nor its customers has performed all of the method steps recited in those Asserted claims. Direct infringement occurs where all steps of a claimed method are performed by or are attributable to a single party. Where more than one party is involved in practicing the steps, you must determine whether the acts of one are attributable to the other such that a single party is responsible for the infringement. One way

where there may be direct infringement if no single party performs all of the steps of a claimed process but more than one party performs every step of the process is when a party directs or controls another party's performance of the claim steps.

To prove that Motive's customers directed or controlled the acts of Motive, Omnitracs must prove either (i) that Motive's customers instructed Motive to perform the claim step(s) or (ii) Motive performed the claim step(s) to receive a benefit from its customers and that Motive's customers established how or when the claim step(s) were performed.

### INSTRUCTION NO. 19:
### CONTRIBUTORY INFRINGEMENT

Omnitracs argues that Motive has contributed to infringement by its customers. Contributory infringement may arise when someone supplies something that is used to infringe one or more of the patent claims. As with direct infringement, you must determine contributory infringement on a claim-by-claim basis.

In order for there to be contributory infringement by Motive, someone other than Motive must directly infringe a claim of the Asserted Patents; if there is no direct infringement by anyone, there can be no contributory infringement.

If you find Motive's customers have directly infringed the Asserted Patents, then contributory infringement exists if:

(1)   Motive supplied an important component of the infringing part of the product or method;

(2)   The component is not a common component suitable for non-infringing use; and

(3)   Motive supplied the component with the knowledge of the Asserted Patents and knowledge that the component was especially made or adapted for use in an infringing manner.

A "common component suitable for non-infringing use" is a component that has uses other than as a component of the patented product or other than in the patented method, and those other uses are not occasional, farfetched, impractical, experimental, or hypothetical.

Motive's knowledge that the component was especially made or adapted for use in an infringing product or method may be shown with evidence of willful blindness where Motive consciously ignored the existence of both the patent and direct infringement of that patent. For you to find willful blindness (1) Motive must have subjectively believed that there was a high probability that a patent existed covering the accused product or method, and (2) Motive must have taken deliberate actions to avoid learning of the patent.

## INSTRUCTION NO. 20:
## INDUCED INFRINGEMENT

Omnitracs argues that Motive has actively induced its customers to infringe the Asserted Patents. In order for Motive to have induced infringement, Motive must have induced another to directly infringe a claim of an Asserted Patent; if there is no direct infringement by anyone, there can be no induced infringement. As with direct infringement, you must determine induced infringement on a claim-by-claim basis. In order to be liable for inducing infringement, Motive must:

    (1)    have intentionally taken action that actually induced direct infringement;

    (2)    have been aware of the Asserted Patent; and

    (3)    have known that the acts it was causing would infringe the patent.

Motive may be considered to have known that the acts it was causing would infringe the Asserted Patents if it subjectively believed there was a high probability that the direct infringer's product or method was patented and nevertheless deliberately took steps to avoid learning that fact, in other words, willfully blinded itself to the infringing nature of the direct infringer's acts.


## INSTRUCTION NO. 21:
## WILLFUL INFRINGEMENT

In this case, Omnitracs argues that Motive willfully infringed Omnitracs' patents.

To prove willful infringement, Omnitracs must persuade you that Motive infringed a valid claim of Omnitracs' patent. The requirements for proving such infringement were discussed in my prior instructions.

In addition, to prove willful infringement of a claim, Omnitracs must persuade you that it is more likely true than not true that Motive knew of Omnitracs' patent claim and intentionally infringed it, or intentionally ignored or recklessly disregarded that claim. You must base your decision on Motive's knowledge and actions at the time of infringement. Evidence that Motive had knowledge of the patent at the time of infringement by itself is not sufficient to show willfulness. Rather, to show willfulness, you must find that the Motive engaged in additional conduct evidencing deliberate or reckless disregard of Omnitracs' patent rights.

In deciding whether Motive willfully infringed, you should consider all of the facts surrounding the infringement including:

1. whether Motive intentionally copied Omnitracs' patented technology in developing the accused products and methods;
2. whether Motive knew, or should have known, that its conduct involved an unreasonable risk of infringement;
3. whether Motive had a reasonable belief that at the time of infringement that its

products did not infringe the asserted patents or that the patents were invalid;

4.  whether Motive acted consistently with the standards of behavior for its industry; and
5.  whether Motive tried to cover up its infringement.


### INSTRUCTION NO. 22:
### COPYING

Omnitracs argues that a claimed invention was copied. Copying requires duplication of features of the inventor's work based on access to that work. Copying requires proof that a specific product embodying the invention was copied. It is not enough to show that a similarity exists between the patent and a competitor's product. Evidence of copying may include, for example, internal documents, direct evidence such as photos of patented features or disassembly of products, or access and similarity to a patented product.

You may not consider the issue of copying in deciding the question of whether the claims of an issued patent are infringed.  Copying has no import on the question of whether the claims are infringed.


### INSTRUCTION NO. 23:
### PRODUCT EMBODYING AN ASSERTED PATENT CLAIM

Omnitracs contends that Motive engaged in copying of its patents by copying Omnitracs' products.  Evidence of copying a patent owner's product is irrelevant unless the product is shown to be an embodiment of at least one of the asserted patent claims.

A product embodies an asserted patent claim if it practices or contains each limitation found in the asserted claim, either literally or by equivalents. Thus, before you consider the issue whether Motive copied Omnitracs' products, Omnitracs must show by a preponderance of the evidence that the particular product alleged to have been copied meets all of the limitations of one of the Asserted patent claims.  If you do not find that Omnitracs' product allegedly copied by Motive meets all of the limitations of an Asserted patent claim, then you must find that the Motive did not engage in copying of Omnitracs' patents by copying Omnitracs' product.


### INSTRUCTION NO. 24:
### INVALIDITY – BURDEN OF PROOF

I will now instruct you on the rules you must follow in deciding whether or not Motive has proven that the Asserted Claims are invalid. To prove that any claim of a patent is invalid, Motive must persuade you that the claim is invalid by clear and convincing evidence.

During this case, Motive has submitted prior art that was not considered by the United States Patent and Trademark Office (PTO) during the prosecution of the Asserted Patents. Motive contends that such prior art invalidates Asserted claims of the Asserted Patents. In deciding the

issue of invalidity, you may take into account the fact that the prior art was not considered by the PTO when it issued the Asserted Patents. Prior art that differs from the prior art considered by the PTO may carry more weight than the prior art that was considered and may make Motive's burden of showing that it is highly probable that a patent claim is invalid easier to sustain.

## INSTRUCTION NO. 25:
## PERSON OF ORDINARY SKILL IN THE ART

The question of invalidity of a patent claim is determined from the perspective of a person of ordinary skill in the art in the field of the asserted invention as of the effective filing date of the Asserted Patent. In deciding the level of ordinary skill, you should consider all the evidence introduced at trial, including:

1. the levels of education and experience of persons working in the field;
2. the types of problems encountered in the field; and
3. the sophistication of the technology.

Omnitracs contends that the level of ordinary skill in the field for all Asserted Patents was at least a Bachelor of Science degree in electrical engineering, physics, computer engineering, computer science, or related technical field, and at least two years of experience related to the field of vehicle telematics systems or onboard fleet monitoring and data collection systems.

Motive contends that the level of ordinary skill in the field for the '906 and '628 Patents proposed by Omnitracs could also be met by someone who had equivalent training and experience to the bachelor of science degrees proposed by Omnitracs, and that the person had at least three years of experience in the field proposed by Omnitracs.

Motive contends that the level of ordinary skill in the field for the '060 and '253 Patents proposed by Omnitracs could be met by someone who had a bachelor's degree in an equivalent discipline to the degrees proposed by Omnitracs, and that the person had at least two years of professional experience designing or implementing vehicle telematics systems, computerized security systems, onboard fleet monitoring, and data collection system.

## INSTRUCTION NO. 26:
## INVALIDITY – INDEPENDENT AND DEPENDENT CLAIMS

You must evaluate the invalidity of each asserted claim separately. Even if an independent claim is invalid, this does not mean that the dependent claims that depend from it are automatically invalid. However, if you find that a dependent claim is invalid, then you must find that the independent claim from which it depends is also invalid.

## INSTRUCTION NO. 27:
## INVALIDITY – PATENT INELIGIBLE SUBJECT MATTER

Motive contends that the asserted claims of the '628 and '906 Patents are invalid because they claim subject matter that is not eligible for patent protection. Whether a patent claims subject matter that is not eligible for patent protection is an issue for the Court to decide.  You must decide only if Motive has proven that the elements in each of these claims, considered individually and as an ordered combination, involve only activities which a person of ordinary skill in the art would have considered to be well-understood, routine, and conventional at the time the patent application was filed.

Whether a particular technology was well-understood, routine, and conventional goes beyond what was simply known in the prior art. The mere fact that something was disclosed in a piece of prior art, for example, does not mean it was well-understood, routine, and conventional. In determining whether a patent claim involves the performance of well-understood, routine, and conventional activities, you may consider statements made in the patent's specification, as well as evidence of the prior art. You may also consider whether prior art devices, systems, or methods were inferior to the inventions claimed by the '628 and '906 Patents, as well whether the methods and products claimed by the '628 and '906 Patents provided benefits over prior art systems or were inventive compared to those systems, for example, because the asserted clams of the '628 and '906 Patents disclosed a better or simpler way of performing a given function.

## INSTRUCTION NO. 28:
## OBVIOUSNESS

Motive contends that Claims 1, 10, and 15 of the '906 Patent, and Claims 15, 17, and 18 of the '628 Patent are invalid as obvious.

Even though an invention may not have been identically disclosed or described before it was made by an inventor, in order to be patentable, the invention must also not have been obvious to a person of ordinary skill in the field of technology of the patent at the time the invention was made.

Motive may establish that a patent claim is invalid as obvious by showing, by clear and convincing evidence, that the claimed invention would have been obvious to persons having ordinary skill in the art at the time the invention was made in the field of vehicle telematics systems or onboard fleet monitoring and data collection systems.

In determining whether a claimed invention is obvious, you must consider the level of ordinary skill in the field of onboard fleet monitoring and data collection systems at the time the invention was made, the scope and content of the prior art, and any differences between the prior art and the claimed invention, and, if present, so-called secondary considerations of non-obviousness. Do not use hindsight; consider only what was known at the time of the invention.

Keep in mind that the existence of each and every element of the claimed invention in the

prior art does not necessarily prove obviousness. Most, if not all, inventions rely on building blocks of prior art. In considering whether a claimed invention is obvious, you should consider whether, at the time of the claimed invention, there was a reason that would have prompted a person having ordinary skill in the field of the invention to combine the known elements in the prior art in a way the claimed invention does, taking into account such factors as:

1. whether the claimed invention was merely the predictable result of using prior art elements according to their known function(s);
2. whether the claimed invention provides an obvious solution to a known problem in the relevant field;
3. whether the prior art teaches or suggests the desirability of combining elements claimed in the invention;
4. whether the prior art teaches away from combining elements in the claimed invention;
5. whether it would have been obvious to try the combinations of elements, such as when there is a design incentive or market pressure to solve a problem and there are a finite number of identified, predictable solutions.

To find that the prior art rendered the claimed invention obvious, you must find that the prior art provided a reasonable expectation of success.

In determining whether the claimed invention is obvious, you should take into account any objective evidence (sometimes called "secondary considerations") that may shed light on whether or not the claimed invention is obvious, such as:

a) Whether the claimed invention was commercially successful as a result of the merits of the claimed invention (rather than the result of design needs or market-pressure advertising or similar activities);
b) Whether the claimed invention satisfied a long-felt need;
c) Whether others copied the claimed invention;
d) Whether others in the field praised the claimed invention;

In determining whether the claimed invention was obvious, consider each claim separately, but understand that if a dependent claim is obvious, then the claims from which it depends are necessarily obvious as well.

Motive contends that the following pieces of prior art alone or in combination render the Asserted Claims of the '906 and '628 Patents obvious and therefore invalid:

- '906 Patent:
    - The Turnpike System

- '628 Patent:
    - U.S. Patent No. 8,626,568 in view of the 2010 DOT regulations and the Turnpike System
    - The Turnpike System in view of the '568 Patent and the 2010 DOT regulations

**INSTRUCTION NO. 29:**
**DAMAGES – BURDEN OF PROOF**

I will instruct you about the measure of damages. By instructing you on damages, I am not suggesting which party should win on any issue. If you find that Motive infringed any valid claim of the Asserted Patents, you must then determine the amount of money damages to be awarded to Omnitracs to compensate it for the infringement through the date of trial.

The amount of those damages must be adequate to compensate Omnitracs for the infringement. A damages award should put the patent holder in approximately the financial position it would have been in had the infringement not occurred, but in no event may the damages award be less than a reasonable royalty. You should keep in mind that the damages you award are meant to compensate the patent holder and not to punish an infringer.

Omnitracs has the burden to persuade you of the amount of their damages. You should award only those damages that Omnitracs more likely than not suffered. While Omnitracs is not required to prove its damages with mathematical precision, it must prove them with reasonable certainty. Omnitracs is not entitled to damages that are remote or speculative.


**INSTRUCTION NO. 30:**
**DATE DAMAGES BEGIN**

If you find that Omnitracs has proven that Motive infringed any valid Asserted Claim of an Asserted Patent, the first step in determining the amount of damages that Omnitracs is entitled to is to determine the date on which damages started.

The beginning date for any damages for the '253 patent is April 5, 2018.

The beginning date for any damages for the '628 patent is July 16, 2018.

The beginning date for any damages for the '906 and '060 patents is October 13, 2023.


**INSTRUCTION NO. 31:**
**TYPES OF DAMAGES**

There are different types of damages that Omnitracs may be entitled to recover. In this case, Omnitracs seeks lost profits from some sales related to the '253 Patent and a reasonable royalty for the remainder. Omnitracs only seeks a reasonable royalty for the '060, '628, and '906 Patents.

## INSTRUCTION NO. 32:
## LOST PROFITS – REQUIREMENTS

In this case, Omnitracs seeks to recover lost profits in connection with the '253 Patent.

To recover lost profits for infringing sales, Omnitracs must show that but for the infringement there is a reasonable probability that they would have made sales that Motive made of the infringing product. Omnitracs must show the share of Motive's sales that they would have made if the infringing product had not been on the market.

Omnitracs is entitled to lost profits if they establish each of the following:

    1.    that there was a demand for the patented product or method;

    2.    that there were no available, acceptable non-infringing substitutes for the products or methods for which Omnitracs seeks lost profits, or, if there were, the number of sales made by Motive that Omnitracs would have made despite the availability of any acceptable non-infringing substitutes;

    3.    that Omnitracs had the manufacturing and marketing capacity to make any infringing sales actually made by Motive and for which Omnitracs seeks an award of lost profits—in other words, that Omnitracs was capable of satisfying the demand; and

    4.    the amount of profit Omnitracs would have made if Motive had not infringed.

## INSTRUCTION NO. 33:
## LOST PROFITS – DEMAND

Demand for the patented product or method can be proven by significant sales of a patent holder's patented product or method, or significant sales of an infringing product or method containing the patented features.

## INSTRUCTION NO. 34:
## LOST PROFITS – NON-INFRINGING SUBSTITUTE

An acceptable non-infringing substitute must include the advantages of the patented invention that were important to the actual buyers of the infringing product. A non-infringing substitute may be one that involved the modification of the infringing product to avoid infringement or the removal of the patented feature from the product altogether. To be an acceptable substitute, however, the substitute must have been available during the period when the infringing product was sold. A substitute may be considered available as a substitute even if it was not on sale during the infringement period, if Motive shows that, during that period, a competitor or Motive had all the necessary equipment, materials, know-how, and experience to

design and manufacture a non-infringing substitute and sell it to its customers. If some of Omnitracs' customers would have been just as likely to purchase a non-infringing acceptable product as to purchase Omnitracs' product, then Omnitracs has not shown that but for Motive's sales, it would have made the sales that Motive made. Even if you find that Motive's infringing sales and Omnitracs' patented products were the only ones with the advantages of the patented invention, Omnitracs is nevertheless required to prove that it, in fact, would have made Motive's infringing sales.

**INSTRUCTION NO. 35:**
**LOST PROFITS – MARKET SHARE**

Omnitracs may prove the number of sales it would have made if the infringement had not happened by proving its share of the relevant market excluding infringing products. You may award Omnitracs a share of profits equal to that market share even if there were non-infringing substitutes available.

In deciding Omnitracs' market share, you must decide which products are in the same market as Omnitracs' products and the accused products. Products are in the same market if they are sufficiently similar to compete against each other. Two products are sufficiently similar if one does not have a significantly higher price than or possess characteristics significantly different than the other.

**INSTRUCTION NO. 36:**
**LOST PROFITS – CAPACITY**

A patent holder is only entitled to lost profits for sales it could have actually made. In other words, Omnitracs must show that they had the manufacturing and marketing capability to make the sales they said they lost. This means Omnitracs must prove it is more probable than not that it could have made and sold, or could have had someone else make or sell for it, the additional products it says it could have sold but for the infringement.

**INSTRUCTION NO. 37:**
**LOST PROFITS – COMPUTATION**

Omnitracs may calculate its lost profits on lost sales by computing the lost revenue for sales it claims it would have made but for the infringement of the '253 Patent and subtracting from that figure the amount of additional costs or expenses it would have incurred in making those lost sales, such as cost of goods, sales costs, packaging costs, and shipping costs. Certain fixed costs that do not vary with increases in production or scale, such as taxes, insurance, rent, and administrative overhead, should not be subtracted from a patent holder's lost revenue.

**INSTRUCTION NO. 38:**
**REASONABLE ROYALTY**

If you find that an Asserted Claim is infringed and not invalid, Omnitracs is entitled to at least a reasonable royalty to compensate them for that infringement. For the '060, '906, and '628 Patents, Omnitracs only seeks a reasonable royalty. For the '253 Patent, if you find that Omnitracs has not proven its claims for lost profits, or that it has proven their claims for lost profits for only a portion of the infringing sales, then you must award Omnitracs a reasonable royalty for all infringing sales for which they have not been awarded lost profits damages for those patents.

**INSTRUCTION NO. 39:**
**REASONABLE ROYALTY**

A royalty is a payment made to a patent holder in exchange for the right to make, use or sell the claimed invention. This right is called a "license." A reasonable royalty is the payment for the license that would have resulted from a hypothetical negotiation between the patent holder and the alleged infringer taking place at the time when the infringing activity first began. In considering the nature of this negotiation, you must assume that both parties would have acted reasonably and would have entered into a license agreement. You must also assume that both parties believed the patent was valid and infringed. Your role is to determine what the result of that negotiation would have been. The test for damages is what royalty would have resulted from the hypothetical negotiation and not simply what either party would have preferred. Evidence of things that happened after the infringement first began can be considered in evaluating the reasonable royalty only to the extent that the evidence aids in assessing what royalty would have resulted from a hypothetical negotiation just prior to the first infringement.

**INSTRUCTION NO. 40:        v**
**REASONABLE ROYALTY – FACTORS**

In determining the reasonable royalty, you should consider all the facts known and available to the parties at the time the infringement began. Some of the kinds of factors that you may consider in making your determination are:

1. The royalties received by the patentee for the licensing of the patent in suit, providing or tending to prove an established royalty.

2. The rates paid by the licensee for the use of other patents comparable to the patent in suit.

3. The nature and scope of the license, as exclusive or non-exclusive; or as restricted or non-restricted in terms of territory or with respect to whom the manufactured product may be sold.

4. The licensor's established policy and marketing program to maintain his patent

monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly.

5. The commercial relationship between the licensor and licensee, such as, whether they are competitors in the same territory in the same line of business; or whether they are inventor and promotor.

6. The effect of selling the patented specialty in promoting sales of other products of the licensee; the existing value of the invention to the licensor as a generator of sales of his non-patented items; and the extent of such derivative or convoyed sales.

7. The duration of the patent and the term of the license.

8. The established profitability of the product made under the patent; its commercial success; and its current popularity.

9. The utility and advantages of the patent property over the old modes or devices, if any, that had been used for working out similar results.

10. The nature of the patented invention; the character of the commercial embodiment of it as owned and produced by the licensor; and the benefits to those who have used the invention.

11. The extent to which the infringer has made use of the invention; and any evidence probative of the value of that use.

12. The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions.

13. The portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer.

14. The opinion testimony of qualified experts.

15. The amount that a licensor (such as the patentee) and a licensee (such as the infringer) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.

No one factor is dispositive and you can and should consider the evidence that has been presented to you in this case on each of these factors. You may also consider any other factors which in your mind would have increased or decreased the royalty the alleged infringer would

19

have been willing to pay and the patent holder would have been willing to accept, acting as normally prudent business people.

## INSTRUCTION NO. 41:
## REASONABLE ROYALTY – CALCULATION

A royalty can be calculated in several different ways and it is for you to determine which way is the most appropriate based on the evidence you have heard.

One way to calculate a royalty is to determine what is called an "ongoing royalty." To calculate an ongoing royalty, you must first determine the "base," that is, the product on which the alleged infringer is to pay. You then need to multiply the revenue the defendant obtained from that base by the "rate" or percentage that you find would have resulted from the hypothetical negotiation. For example, if the patent covers a nail, and the nail sells for $1, and the licensee sold 200 nails, the base revenue would be $200. If the rate you find would have resulted from the hypothetical negotiation is 1%, then the royalty would be $2, or the rate of 0.01 times the base revenue of $200. By contrast, if you find the rate to be 5%, the royalty would be $10, or the rate of 0.05 times the base revenue of $200. These numbers are only examples, and are not intended to suggest the appropriate royalty rate.

Instead of a percentage royalty, you may decide that the appropriate royalty that would have resulted from a hypothetical negotiation is a fixed number of dollars per unit sold. If you do, the royalty would be that fixed number of dollars times the number of units sold.

If the patent covers only part of the product that Motive sells, then the base would normally be only that feature or component. For example, if you find that for a $100 car, the patented feature is the tires which sell for $5, the base revenue would be $5.

In this case, Motive has introduced evidence of licenses. Comparable license agreements are one factor that may inform your decision as to the proper amount and form of the reasonable royalty award, similar to the way in which the value of a house is determined relative to comparable houses sold in the same neighborhood. Whether a license agreement is comparable to the license under the hypothetical license scenario depends on many factors, such as whether they involve comparable technologies, comparable economic circumstances, comparable structure, and comparable scope. If there are differences between a license agreement and the hypothetical license, you must take those into account when you make your reasonable royalty determination. The hypothetical license is deemed to be a voluntary agreement. When determining if a license agreement is comparable to the hypothetical license, you may consider whether the license agreement is between parties to a lawsuit and whether the license agreement was a settlement influenced by a desire to avoid further litigation.  The royalty rate in one or more of those licenses may be considered if it helps to establish the value that is attributable to the patented invention as distinct from the value of other features of Motive's product.

It is up to you, based on the evidence, to decide what type of royalty is appropriate in this case for the life of the patent.

**INSTRUCTION NO. 42:**
**REASONABLE ROYALTY – APPORTIONMENT**

The amount you find as damages must be based on the value attributable to the patented invention, as distinct from unpatented features of the accused product or other factors such as marketing or advertising, or Omnitracs' size or market position. A royalty compensating the patent holder for damages must reflect the value attributable to the infringing features of the product, and no more. The process of separating the value of the allegedly infringing features from the value of all other features is called apportionment. When the accused infringing products and methods have both patented and unpatented features, your award must be apportioned so that it is based only on the value of the patented features, and no more.

**INSTRUCTION NO. 43:**
**CALCULATING DAMAGES IN CASES OF INDUCED INFRINGEMENT**

In order to recover damages for induced infringement, Omnitracs must either prove that the Accused Product necessarily infringes the Asserted Patent or prove acts of direct infringement by others that were induced by Motive. Because the amount of damages for induced infringement is limited by the number of instances of direct infringement, Omnitracs must further prove the number of direct acts of infringement of the Accused Product, for example, by showing individual acts of direct infringement or by showing that a particular class of users directly infringes.

In order to recover damages for contributory infringement, Omnitracs must either prove that the Accused Product necessarily infringes the Asserted Patent or prove acts of direct infringement by others to which Motive made a substantial contribution. Because the amount of damages for contributory infringement is limited by the number of instances of direct infringement, Omnitracs must further prove the number of direct acts of infringement of each Asserted Patent, for example, either by showing individual acts of direct infringement or by showing that a particular class of users directly infringes.

**INSTRUCTION NO. 44:**
**DUTY TO DELIBERATE**

Before you begin your deliberations, elect one member of the jury as your presiding juror. The presiding juror will preside over the deliberations and serve as the spokesperson for the jury in court.

You shall diligently strive to reach agreement with all of the other jurors if you can do so. Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to their views.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. Do not be unwilling to change your opinion if the discussion persuades you that you should. But do not come to a decision simply because other jurors think it is right or change an honest belief about the weight and effect of the evidence simply to reach a verdict.

### INSTRUCTION NO. 45:
### NOTES

Some of you have taken notes during the trial. Whether or not you took notes, you should rely on your own memory of what was said. Notes are only to assist your memory. You should not be overly influenced by your notes or those of your fellow jurors.

### INSTRUCTION NO. 46:
### CONDUCT OF THE JURY

Because you must base your verdict only on the evidence received in the case and on these instructions, I remind you that you must not be exposed to any other information about the case or to the issues it involves. Except for discussing the case with your fellow jurors during your deliberations:

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it. This includes discussing the case in person, in writing, by phone, tablet, computer, or any other means, via email, via text messaging, or any internet chat room, blog, website or application, including but not limited to Facebook, YouTube, X (formerly known as "Twitter"), Instagram, LinkedIn, Snapchat, TikTok, or any other forms of social media. This applies to communicating with your family members, your employer, the media or press, and the people involved in the trial. If you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and to report the contact to the court.

Do not read, watch, or listen to any news or media accounts or commentary about the case or anything to do with it; do not do any research, such as consulting dictionaries, searching the Internet, or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own. Do not visit or view any place discussed in this case, and do not use Internet programs or other devices to search for or view any place discussed during the trial. Also, do not do any research about this case, the law, or the people involved—including the parties, the witnesses, or the lawyers—until you have been excused as jurors. If you happen to read or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

These rules protect each party's right to have this case decided only on evidence that has been presented here in court. Witnesses here in court take an oath to tell the truth, and the accuracy of their testimony is tested through the trial process. If you do any research or

investigation outside the courtroom, or gain any information through improper communications, then your verdict may be influenced by inaccurate, incomplete, or misleading information that has not been tested by the trial process. Each of the parties is entitled to a fair trial by an impartial jury, and if you decide the case based on information not presented in court, you will have denied the parties a fair trial. Remember, you have taken an oath to follow the rules, and it is very important that you follow these rules.

A juror who violates these restrictions jeopardizes the fairness of these proceedings, and a mistrial could result that would require the entire trial process to start over. If any juror is exposed to any outside information, please notify the court immediately.

### INSTRUCTION NO. 47:
### COMMUNICATIONS WITH COURT

If it becomes necessary during your deliberations to communicate with me, you may send a note through the clerk, signed by any one or more of you. No member of the jury should ever attempt to communicate with me except by a signed writing. I will not communicate with any member of the jury on anything concerning the case except in writing or here in open court. If you send out a question, I will consult with the lawyers before answering it, which may take some time. You may continue your deliberations while waiting for the answer to any question. Remember that you are not to tell anyone—including the court—how the jury stands, whether in terms of vote count or otherwise, until after you have reached a unanimous verdict or have been discharged.

### INSTRUCTION NO. 48:
### VERDICT

A verdict form has been prepared for you with questions you must answer. I have already instructed you on the law that you are to use in answering these questions. You must follow my instructions and the form carefully. You must consider each question separately. Although you may discuss the evidence and the issues to be decided in any order, you must answer the questions on the verdict form in the order they appear. After you answer a question, the form tells you what to do next. All nine of you must agree on an answer before you can move on to the next question.

The verdict form in this case has two parts. You will be given only Part One of the verdict form when you retire to deliberate. When you have finished filling out Part One according to your deliberations, your presiding juror should sign and date the verdict form, and advise the clerk that you are ready to return to the courtroom.

After Part One of the verdict form has been completed, you will be provided Part Two of the verdict form, based on your answers to the Part One. This two-part process is intended to simplify the instructions on the verdict form. Please do not read into the verdict form, the two-part process, or these instructions that I have an opinion regarding the evidence or what your verdict should be.